## Jacob Hutchins v. Gottlieb Kimmell.

*Order of proof: Discretion: Criminal conversation: Marriage.* An objection that relates only to the order of proof will not be considered; that is matter of discretion; and an objection in an action for criminal conversation with plaintiff's wife, to the admission of evidence of the offense charged before any proof had been made that plaintiff and the woman were husband and wife, comes within this rule.

*Criminal conversation: Evidence: Damages.* In an action for criminal conversation with the wife of plaintiff, evidence of the plaintiff's conduct the evening and morning following the communication to him of his wife's offense, is admissible as bearing upon the question of damages.

HUTCHINS v. KIMMELL.

Documents: Foreign language: Translating before the jury: Error cured. Permitting documents in a foreign language to be translated in the hearing of the jury before the court had decided upon their admissibility, if an error, is one that is cured when the court afterwards admitted them in evidence.

Identity: Persons: Names: Evidence: Marriage certificate: Weight of evidence. Proof that the plaintiff's full name is John Gottlieb Kimmell, and that the woman he claimed to be his wife is known by the name of Philopena Kimmell, and that her maiden name was Utz, is some evidence of the identity of these persons with those named in a marriage certificate as John Gottlieb Kimmell and Sabrina Philopena Kimmell, born Utz; and the weight of the evidence is matter only for the jury.

Criminal conversation: Evidence: Actual marriage. In an action for criminal conversation with one alleged to be the wife of the plaintiff an actual marriage must be proved; and such evidence of cohabitation and reputation as would be sufficient in other civil actions will not suffice in such a case.

Marriage: Ceremony: Present agreement followed by cohabitation. Where parties agree presently to take each other for husband and wife, whatever the form of ceremony, or if all ceremony be dispensed with, and from that time live together professedly in that relation, this, under the laws of this state, constitutes a valid marriage; and such is the settled doctrine of the American courts.

Marriage: Law of the place. The general rule of law is, that a marriage valid where it is celebrated is valid every where, but the converse to this is equally general, that a marriage void where it is celebrated is void every where.

Marriage: Formal ceremony: Consent: Presumptions. A formal ceremony of marriage, whether in due form or not, must be presumed to be by consent, and therefore, prima facie, a contract of marriage per verba de presenti.

Marriage: Restrictive regulations: Local statutes: Exceptional cases: Burden of proof: Presumptions. Marriage between parties capable of contracting it, is of common right and valid by a common law prevailing throughout Christendom; regulations restrictive of it, or imposing conditions upon it, are exceptional; they depend on local statutes, and, as in other cases of exceptions, if one claims that a case falls within them, the burden of proof is upon him to show the fact; prima facie, a good marriage is shown by proof of a present agreement, followed by cohabitation; and it will not be presumed, in the absence of proof, there are regulations anywhere restrictive of this common right.

Marriage: Certificates: Evidence: Ceremony of marriage: Foreign law. Certificates, therefore, which are sufficient to prove the performance of a ceremony of marriage in a foreign country, prima facie establish the marriage, and the admission of such certificates in evidence, without proof of the foreign law, is not error.

Practice: Decisions: Questions not argued. The court on writ of error usually confines its attention to the points made on the argument, and does not, except under very peculiar circumstances, deem it proper to go beyond them to discuss in the opinion other objections that may have been raised by the record, but which are not insisted upon on the argument.

Rehearing: Questions raised and considered, but not argued. A rehearing will not be granted for the purpose of giving an opportunity of arguing a question raised by the record but not argued before, and which, though not discussed in the opinion delivered, did not escape the observation of the court, and was the subject of its deliberation and investigation, where the argument on the motion for rehearing does not present the matter in any light different from that in which it was before considered.

Heard October 28 and 29.    Decided January 12.

Error to Jackson Circuit.

*Higby & Gibson*, for plaintiff in error.

*Crane & Montgomery*, and *David Johnson*, for defendant in error.

COOLEY, J.

Kimmell sued Hutchins in case for criminal conversation with Philopena Kimmell, the wife of the plaintiff. Having recovered judgment, the case is brought here on exceptions to various rulings of the circuit judge.

1. It is objected that the judge permitted evidence to be given of the offense charged before any proof had been made that plaintiff and the woman were husband and wife. But this only relates to the order of proof, and was within the discretion of the circuit judge.—*Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 *Mich.*, 99.

2. It is also objected that evidence was received of the conduct of the plaintiff the evening and morning following the communication to him of his wife's offense. We see no error in this. The purpose was to show how he was affected by the disclosure, and the proof would naturally and properly bear upon the question of damages.

3. Complaint is also made that certain *documents* in a foreign language were permitted to be translated in the hearing of the jury before the court had decided upon their admissibility. But this, whether proper or not, became immaterial when the court afterwards received them in evidence.

4. The evidence of marriage relied upon by the plaintiff was a marriage of John Gottlieb Kimmell and Sabrina Philopena Kimmell, born Utz, and the court was requested to instruct the jury that there was no evidence of the identity of these parties with the plaintiff and the woman he claimed to be his wife. The request was refused. The evidence that plaintiff's full name was John Gottlieb Kimmell was clear and undisputed, but there was no evidence of the identity of the woman with Sabrina

Philopena Kimmell, except that she was known by the name of Philopena Kimmell, and that her maiden name was Utz. But in these were certainly some evidences of identity, and however slight they might be, their weight was for the jury.

5. The only other assignments of error which seem to us to require attention are those which relate to the proof of the marriage. The marriage was alleged to have taken place in the kingdom of Wurtemberg, and the evidence of it consisted of the following certificates:

(a) The certificate of Ferdinand Haug, describing himself minister of the Evangelist Lutheran church at Winesbergh in the kingdom of Wurtemberg, that on the register of his religious denomination of which he has charge there is recorded the marriage of John Gottlieb Kimmell and Sabrina Philopena Bauchle, born Utz, performed by the minister Shilling, pastor of the society, who had lawful authority to perform the same.

(b) The certificate of the judge of the High Court of Winesbergh of the kingdom of Wurtemberg, that the certificate of the minister Haug is genuine and entitled to credit, and that the marriage certified to was "in due form and properly solemnized."

(c) The certificate of the chief chancellor of the department of justice, in attestation of that of the judge of the High Court of Winesbergh. To this was also added the certificate of the American consul, but that is immaterial.

All these certificates were objected to when offered, on various grounds, which in the argument in this court are narrowed down to the following: *first*, because they were not accompanied by any proof of the foreign law regulating marriages in Wurtemberg; and, *second*, because it is not sufficient that a ceremony was performed purporting to be a marriage, unless it is also shown that such ceremony was recognized by, and in accordance with the law of the country where it took place. We take these objections as they are presented in the brief of counsel for the plaintiff in

error, rather than as they were made below, because we have a right to suppose that as thus given they point out all the error in law supposed to have been committed in their reception, and that they have been framed with deliberation, with a view to calling our attention to the precise point which is designed as the subject of our examination. It will be perceived that no point is made upon the proof, by these certificates or otherwise, of the fact of a ceremony of marriage between the parties named in the minister's certificate, but the objections are narrowed to this: that there is no proper and legal showing of what was the law of Wurtemberg, on the subject of marriage, and consequently it does not appear that the ceremony perfected a legal marriage. The point is that proof of the ceremony alone was not proof of the marriage until the law was shown which would make it such.

It is not disputed that in a case of this nature an actual marriage must be proved. Such evidence of cohabitation and reputation as would be suffi cient in other civil actions will not suffice where it is sought to fix upon the woman a charge of adultery.—*Addison on Torts, 698; 2 Green. Ev.*, § *461; 1 Bish. Mar. and Div.*, § *442, 4th ed.* But had the supposed marriage taken place in this state, evidence that a ceremony was performed ostensibly in celebration of it, with the apparent consent and co-operation of the parties, would have been evidence of a marriage, even though it had fallen short of showing that the statutory regulations had been complied with, or had affirmatively shown that they were not. Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to legal penalties for a disregard of its obligations. This has become the settled doctrine of the American courts; the few cases of dissent or apparent

dissent being borne down by a great weight of authority in favor of the rule as we have stated it.—*Fenton v. Reed, 4 Johns., 52; Jackson v. Winne, 7 Wend., 47; Starr v. Peck, 1 Hill, 270; Rose v. Clark, 8 Paige, 574; Matter of Taylor, 9 Paige, 611; Clayton v. Wardell, 4 N. Y., 230; Cheney v. Arnold, 15 N. Y., 345; O'Gara v. Eisenlohr, 38 N. Y., 296; Pearson v. Howey, 6 Halst., 12; Hantz. v. Sealy, 6 Binn., 405; Commonwealth v. Stump, 53 Penn. St., 132; Newbury v. Brunswick, 2 Vt., 151; State v. Rood, 12 Vt., 396; Northfield v. Vershire, 33 Vt., 110; Duncan v. Duncan, 10 Ohio, N. S., 181; Carmichael v. State, 12 Ohio, N. S., 553; State v. Patterson, 2 Ired., 346; Londonderry v. Chester, 2 N. H., 268; Keyes v. Keyes, 2 Fost., 553; Bashaw v. State, 1 Yerg., 177; Grisham v. State, 2 Yerg., 589; Cheseldine v. Brewer, 1 H. & McH., 152; State v. Murphy, 6 Ala., 765; Potier v. Barclay, 15 Ala., 439; Dumaresly v. Fishly, 3 A. K. Marsh., 368; Graham v. Bennet, 2 Cal., 503; Case v. Case, 17 Cal., 598; Patton v. Philadelphia, 1 La. Ann., 98; Holmes v. Holmes, 6 La. R., 463; Hallett v. Collins, 10 How., 174.*

Such being the law of this state, it remains to be seen whether the rule can be applied to a marriage contracted in a foreign country, in the absence of any evidence showing what is the law on the subject of marriage in such foreign country.

The general rule of law is, that a marriage valid where it is celebrated is valid every where, but the converse to this is equally general, that a marriage void where it is celebrated is void every where. As every country is at liberty to make regulations of its own on the subject which other countries must respect, and by which they must in general judge of the validity of a marriage contracted where the regulations prevail, and as these regulations may and often do require something more than the mere consent of the parties, it may follow in any case that a presumption of marriage, based upon such facts merely as would be sufficient to establish one if contracted here, would be a pre-

sumption against the fact, and would support a marriage which the local law would condemn, and the local courts would refuse to recognize or support.

All presumptions, however, are liable to be contrary to the fact, but they attend us at every point in our examinations of facts, and it is impossible to dispense with them. They do not in general preclude the facts being brought forward to overthrow the presumptions, but they supply imperfections where the facts are not fully developed, and they determine in many cases which party shall take upon himself the burden of showing what are the facts bearing upon the point in controversy. And in the case before us the question is not whether the foreign ceremony of marriage, followed by cohabitation, makes out beyond dispute a valid marriage, but whether it does not show one *prima facie* valid, so as to call upon the party disputing its validity to point out the impediments, if any, which rendered it ineffectual.

A formal ceremony of marriage, whether in due form or not, must be assumed to be by consent, and therefore *prima facie* a contract of marriage *per verba de presenti.*— *Fleming v. People,* 27 *N. Y.,* 329. And when the local law is not shown, the argument in its favor is, that marriages between parties capable of contracting it is of common right, and valid by a common law prevailing throughout Christendom. Regulations restrictive of this right, or imposing conditions upon it, are exceptional; they depend on local statutes, and, as in other cases of exceptions, if one claims that a case falls within them, the burden is upon him to show the fact. *Prima facie* a good marriage is shown when the contract is proved with cohabitation following it, and we cannot assume that there are regulations restrictive of the common right until they are shown. —*Whart. Confl. L.,* §§ *170–173 ; Bish. Mar. & Div.,* §§ *521–528, 4th ed.* Upon this question it has been said by *Chief Justice Parker* of Massachusetts, that a marriage *de facto* being proved, it is but reasonable that it should be

presumed to be according to the laws.  "As if a marriage were proved to have taken place in France, for instance, it should seem fit to require the party who denies the marriage to prove its invalidity."—*Raynham v. Canton, 3 Pick.*, *297.* And in the case of *People v. Calder, 30 Mich.*, it was said of a marriage contracted in another state: "When the evidence shows that the parties appeared at a church, and that the officiating minister there publicly and in the presence of other persons in attendance, performed a ceremony of marriage between such parties, and further, that the parties appeared to regard themselves as then married, it is fairly to be presumed, in the absence of any thing to the contrary, that the ceremony was regular and legal, although the evidence fails to show what words were used by the parties or the minister, or the particulars of the ceremony, or what specific kind of ceremony was or would be according to the forms, usages or customs of such church." This is likewise the doctrine of *Steadman v. Powell, 1 Add.*, *58,* where the proof of an Irish marriage did not go beyond that which was made in this case, and did not negative the fact that the celebration might have been by a popish priest, which, by the local law, would have rendered it invalid. It has been held in this state that the common law as it exists among us will be presumed to prevail in a foreign country in the absence of proof to the contrary,—*High, Appellant, 2 Doug. Mich., 515; Crane v. Hardy, 1 Mich., 56;* and though it may be questionable if this doctrine is to be applied universally, it cannot be disputed that the reason of it is applicable to all marriages celebrated in Christian countries, in which it may properly be assumed that a general common law on the subject of marriage still prevails.—*Whart. Confl. L.,* § *171.* And as has been well said, the inconvenience of adhering to more rigid rules in the proof of foreign marriages, would, in a country so largely populated by immigrants as is ours, be peculiarly great, and put courts and litigants to useless trouble and expense in every instance.—*Bish. Mar. & Div.,* § *528, 4th ed.*

HUTCHINS *v.* KIMMELL.

Polygamous and incestuous marriages celebrated in countries where they are permitted, are nevertheless treated as invalid here, because they are condemned by the common voice of civilized nations, which establishes a common law forbidding them; and the same reasoning which condemns them must sustain the marriages by mere consent which the same common law permits and sanctions.— *Whart. Confl. L.*, § *180.* And especially should this be the case when the parties, after taking such steps abroad to constitute a marriage as would be sufficient under our laws, remove afterwards to this country, and in apparent reliance upon the marriage, and the protection our laws would give it, continue for many years to live together as husband and wife, recognizing, as there is every reason to believe they did, the validity and binding obligation of the marriage for all purposes.

If these views are correct, proof of the ceremony of marriage did *prima facie* establish it, and the court did not err in holding that it was not necessary to prove the foreign law before putting the certificates in evidence.

The judgment of the circuit court must be affirmed, with costs.

The other Justices concurred.

---

Afterwards, at the April term, 1875, a motion was presented for a rehearing of this cause.

*W. K. Gibson,* for plaintiff in error, was heard for the motion.

*M. V. Montgomery,* for defendant in error, *contra.*

PER CURIAM.

The motion in this case is for a re-argument, based upon the ground that counsel were in error as to the prac-

tice of this court, in confining its attention to the points made on the argument, when other objections appear in the record.

If we were of opinion that substantial rights had been lost by plaintiff in error, in consequence of any error on the part either of counsel or of the court, we should regard a motion of this nature as one appealing strongly to equitable consideration. We are confident, however, that in this case the court has been under no error when disposing of this case. The points actually made were all considered, and we have no reason to suppose that a re-argument would bring us to any different conclusion.

The point which was not argued before, but which counsel desire to argue now, did not escape our observation before, but was the subject of our deliberation and investigation. We did not consider it in the opinion, because we deem it more proper and more courteous to counsel, that we should not wander from the precise points they make, except under very special circumstances. But as it was in the record, and the point was presented on papers which were unusual in form, we made it the subject of examination, and on that examination we thought we discovered reasons sufficient for the failure on the part of counsel to press the point. It did not appear to us, as it does now to counsel, that the papers were clearly inadmissible. Without having the originals before us, either then or on this motion, and judging from the copies merely, as they are set out in the record, we were not satisfied any error had been committed by the circuit judge, and we cannot see any reason for giving a rehearing now, which might not exist in most cases. A new hearing might give an opportunity for spreading our views upon this question upon the record, but that, of itself, is not sufficient reason for opening the case.

Motion denied.