Lanctot vs. The State.

LANCTOT, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 23 — December 10, 1897.*

*Foreign marriage: Presumption as to validity: Privileged communication: Husband and wife: Criminal law.*

1. Proof that a formal marriage had been solemnized in a foreign country, in a church, by a person assuming the office of priest or minister, raises the presumption that the marriage was in accordance with the laws of the country and valid, and, especially where followed by cohabitation, casts upon the person attacking its validity the burden of showing that the law required some further act or fact.

2. On a trial for adultery, where the prosecution sought to prove the identity of the defendant as one of the parties to a marriage, letters offered for that purpose and claimed to have been written by him to his alleged wife were privileged communications and incompetent; and where they contained matter bearing upon the question of identity their admission, against the objection of the defendant, was a material error.

ERROR to review a judgment of the circuit court for Bay-field county: JOHN K. PARISH, Circuit Judge.  *Reversed.*

The plaintiff in error was convicted of the crime of adultery.  It was alleged against him that, having a lawful wife (one Octavia Arvasa) living, he had contracted a formal marriage with one Vienna Michaud, and was living with her in unlawful cohabitation.  Two witnesses testified to having been present at a marriage ceremony between the plaintiff in error and Octavia Arvasa; that the ceremony was solemnized by a priest in a church in the province of Quebec, Canada, and was followed by cohabitation and the birth of children, and that Octavia is still alive.  The defendant afterwards came to this state, leaving Octavia in Quebec, and made a formal marriage, at Ashland, with one Vienna Michaud, with whom he afterwards cohabited as his wife.

At the close of the evidence on the part of the state, the plaintiff in error moved for a dismissal of the action on the ground that the state had failed to prove the alleged former marriage.  The motion was denied.  The defendant then testified, denying that he was the man Joseph Lanctot, or that he had been married to Octavia Lanctot, and testified that his true name was John C. Harvey.  One witness identified him as John C. Harvey.

The principal burden of the trial was on the question of the identity of the defendant with the Joseph Lanctot who was the party to the marriage ceremony in the church in Quebec.  His marriage and cohabitation with Vienna Michaud were conceded.  The state, to maintain the issue on its part, introduced in evidence, over the objection of the plaintiff in error, certain letters which, it was alleged, the plaintiff in error had written back to his wife, Octavia, from various places in this state and in Michigan.  They were ordinary letters, such as might be expected from persons of his station and circumstances, to the wife he had left behind him, expressive of marital tenderness and affection.  They were

addressed "Dear Wife," and subscribed "Your devoted husband, Joseph Lanctot." But two of them were not subscribed with his name.   One said, instead, "You will address Mr. John C. Harvey, Duluth, Minnesota;" the other, "This is my address, Mr. John C. Harvey," adding a post office.

For the plaintiff in error the cause was submitted on the brief of *Howard Benton*, attorney, and *Titus & McIntosh*, of counsel.

*The Attorney General*, for the defendant in error.

NEWMAN, J.   Two questions are presented:   (1) Was the evidence of the former marriage sufficient to sustain the conviction?   And (2) was the reception of the letters in evidence prejudicial error?

The law relating to proof of foreign marriages seems to be that where a formal ceremony of marriage, solemnized in a church by a person assuming the office of a priest or minister, is shown, it will be presumed, in favor of the marriage, that it is in accordance with the law of the country and valid.   So, when such a marriage is shown, especially if followed by cohabitation, the burden is on him who denies the validity of the marriage to show that the law required some further act or fact to make it valid.   1 Bishop, Mar., Div. & Sep. §§ 1115–1122;  Whart. Cr. Law (10th ed.), § 1698, par. 1; Freeman's note to *State v. Hodgskins*, 36 Am. Dec. 742–745; *Hutchins v. Kimmell*, 31 Mich. 126;  *People v. Loomis*, 106 Mich. 250;  *Raynham v. Canton*, 3 Pick. 293–297;  *Megginson v. Megginson* (Oreg.), 14 L. R. A. 540, and cases cited in the notes.

The letters received in evidence seem to have a cogent bearing upon the question of the identity of the plaintiff in error with the Joseph Lanctot who was the husband of Octavia Arvasa.   It is not clear that they did not turn the scale against the plaintiff in error.   That they did not cannot be demonstrated.   Certainly the writer of the letters addresses

himself to Octavia as her husband, under the name of Joseph Lanctot, the real name of her husband. Identity of name is of some weight as evidence of identity of person. There came a time when he notified her, in effect, "My name is to be, no longer Joseph Lanctot, but John C. Harvey." This circumstance seems to be well calculated to persuade the jury that John C. Harvey must be the genuine, original Joseph Lanctot, under an alias.

If these letters were, in truth, what they purport to be and what the state represented them to be, they were confidential communications between husband and wife, which are privileged and protected, and not competent to be received in evidence against the objection of either. It is difficult to conceive of any theory on which they could, consistently, be either offered or received. Certainly, to offer them was utterly inconsistent with the state's hypothesis of the case. That was that the plaintiff in error was the husband of the party to whom the letters had been written. On this hypothesis, the letters were, clearly, confidential communications between husband and wife, and so incompetent. Their admission was reversible error. *Selden v. State*, 74 Wis. 271.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison at Waupun will deliver the prisoner, *Joseph Lanctot*, to the sheriff of Bayfield county, to be held in custody by him until he shall be discharged therefrom according to law.