O'TOOLE *v.* OHIO GERMAN FIRE INSURANCE CO.

1. INSURANCE—DEFENSES, NOTICE OF—AMENDMENT.
   The refusal of the trial court to permit, after the closing of plaintiff's evidence, an amendment of the plea and notice of defense, so as to set up the defense of change of title in plaintiff, is discretionary.

2. SAME—HEARSAY—SELF-SERVING DECLARATIONS.
   Evidence in rebuttal that plaintiff, before being accused of any offense, called up the sheriff by telephone and urged him to investigate the fire, is competent to disprove her guilt.

3. EVIDENCE—HUSBAND AND WIFE—CONFIDENTIAL COMMUNICATIONS.
   Letters of a wife to her husband containing confidential communications are admissible as evidence tending to show that she destroyed insured property by fire, where they came into the possession of third persons, without collusion, by finding. 3 Comp. Laws, § 10213.

4. INSURANCE — TITLE — CHANGE OF OWNERSHIP — EFFECT OF ATTACHMENT.
   The levy of an attachment on insured property, without the knowledge of the owner, subsequent to the issuance of the policy, is insufficient to avoid the policy.

5. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.
   An assignment of error that the court erred in failing to submit to the jury the question of waiver of defenses is too general to be considered on appeal.

Error to Lenawee; Chester, J. Submitted November 11, 1909. (Docket No. 82.) Decided December 10, 1909.

Assumpsit by Myrtle E. O'Toole against the Ohio German Fire Insurance Company on a policy of insurance. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Bird & Sampson*, for appellant.

*D. B. Morgan* and *Smith, Baldwin & Alexander*, for appellee.

OSTRANDER, J. The policy of insurance sued upon—a Michigan standard form—is dated November 12, 1904. The barn, a portion of the property insured, burned November 5, 1906. This suit was begun by summons April 2, 1907; the declaration being filed April 10, 1907. The trial began February 7, 1908. With its plea the defendant gave notice that it would rely upon a number of the conditions, violations of which would avoid the policy, among them the one relating to a change other than by death of the insured in the interest, title, or possession of the subject of insurance. The specification in this behalf was that upon a day named a writ of attachment had been levied upon the property. It also gave notice that it would show (I omit the verbiage) that plaintiff fired the barn, or caused it to be fired, with intent to defraud the defendant. The assignments of error relied upon will be referred to in the order in which they are presented in the brief for appellant.

1. It appeared at the trial that, when the policy was issued, plaintiff represented that she was sole owner of the property, when, in fact, it was owned by herself and her husband by entireties; that, the fact being discovered, a rider was placed upon the policy correctly stating the title. About a year before the fire plaintiff again became of record the sole owner of the legal title, a fact not discovered by defendant until the trial had begun. After

plaintiff's case was closed, the court was moved to permit defendant to amend the notice so as to set up specifically the change in the title last above mentioned. The motion was denied, and error is assigned upon the ruling. The proofs of loss contained the statement that the interest of plaintiff in the destroyed property was a total interest, except as to the interest of a certain mortgagee. The statement of counsel to the trial court was that the change of ownership was first discovered from an examination of the records of title made after the trial was begun. The ruling of the court is sustained upon the authority of *First Baptist Church of Jackson* v. *Insurance Co.*, 119 Mich. 203 (77 N. W. 702).

2. The second and third assignments of error are based upon rulings which permitted two witnesses for the plaintiff, who in the order of proof preceded her, to detail certain statements made by plaintiff. To one of the witnesses her statement, made by telephone, was directed. The other heard her talking at the telephone. Neither witness was incompetent to testify to what they heard plaintiff say. What she said, in their presence, was a fact within their knowledge. It is said that the effect of the rulings was to bring to the attention of the jury self-serving statements of the plaintiff. The fact is that she called the office of the sheriff, and said, in substance, that she would like to have the matter of the fire investigated, that there were suspicious circumstances connected with the burning of the barn. The evidential fact sought to be proved was that plaintiff invited an investigation—set one on foot, or sought to do so, the inference being that such conduct was inconsistent with guilty knowledge. The particular act of telephoning and the utterances accompanying it were relevant because the defendant in its notice had informed plaintiff that she was charged, either as principal or as accessory, with burning the insured barn. The testimony for defendant had been concluded. The conduct of plaintiff, her acts and declarations before and after the fire, supposed to be favorable to the theory

of defendant, had been brought to the attention of the jury, including statements which were interpreted as declarations that she intended to burn the barn. The particular conduct and utterances of plaintiff occurring at a time before she had been charged with setting the fire, whether making for her innocence or her guilt, were relevant, and no reason is perceived for excluding them.

3. Two letters and the accompanying envelopes were produced by the defendant, offered in evidence, and excluded upon the objection and ground that they were privileged communications. The letters were communications made by the wife to, and received by, the husband. They were read into the record, and, aside from any presumption, should be regarded as confidential communications. See 4 Wigmore on Evidence, § 2336. Testimony was introduced tending to prove that the letters were found in a room temporarily occupied by the husband, under circumstances indicating that they had escaped from his clothing to the floor of the room. The person who found them occupied no fiduciary or other confidential relation to either spouse. It is not claimed, and there appears to be no foundation for such a claim, that there was collusion between the husband and the one who found them, or between the husband and the defendant. From the finder, but indirectly, they came into the possession of the defendant. They contain relevant and material, if competent, testimony in the nature of admissions of the plaintiff. We need not discuss the proposition advanced by appellant, that the statute privilege should be held to be waived or withdrawn in cases where the communications relate to a projected fraud or crime, to be committed or participated in by one or both of the spouses. See Appleton on Evidence, p. 167. Assuming, but not deciding, that in a proper case the rule contended for ought to be applied, inspection of these letters does not condemn them as within the rule. It is when they are read in the light of many circumstances which they do not disclose or refer to that they take on the character ascribed to them by coun-

sel, and then only as one may find the truth of many other alleged facts to be.   In determining the correctness of the ruling of the trial court, we must consider the letters as confidential communications from a wife to her husband, concerning which he could not be examined without her consent and his own, which judicial process would not compel him to produce in evidence against or for her or himself.   It is manifest, and has already been indicated, that the sole reason which is or can be adduced for receiving the letters in evidence is the one that because the letters were lost by the husband and were found by a stranger, who thus became possessed, and through whom defendant became possessed of the original documents of communication, there has also been lost, not the confidential character of the utterances, but the common-law and statute privilege of the parties to the communications. There are adjudications, notably *Mercer* v. *State*, 40 Fla. 216 (24 South. 154, 74 Am. St. Rep. 135), which appear to proceed upon the theory that such a communication is not competent evidence, is "privileged from exposure in evidence in and of itself, regardless of the custody from which it was produced at the trial."   The manner in which the letters there considered came into the possession of the prosecution was not disclosed.   In *Liggett* v. *Glenn*, 51 Fed. 381 (2 C. C. A. 286), the privilege of a client with respect to communications made to his attorney was involved.   A certain document of agreement between counsel and clients was filed by the attorney in probate court in support of a claim for services made upon the estate of a deceased client.   Without his knowledge or consent, other counsel procured the contract from the probate court, and offered it as an admission in writing by another signer that he was a stockholder in a certain corporation, and held the number of shares set opposite his signature.   Decision might perhaps have been rested upon the ground that the client was protected from voluntary disclosures of the attorney.   But, in reversing the ruling admitting the document in evidence, it is said that—

"The admissibility of the communication, in our judgment, is not dependent upon the manner in which control thereof is obtained from the counsel, but upon the inherent character of the communication itself. If the admission or statement sought to be put in evidence was made by reason of the confidential relation existing between client and counsel, it becomes a privileged communication, and, as such, it is not competent evidence against the client. Its competency is not dependent upon the mere manner in which knowledge thereof may be obtained from counsel."

No authorities are referred to. See, also, *Lanctot* v. *State*, 98 Wis. 136 (73 N. W. 575, 67 Am. St. Rep. 800); *Ward* v. *State*, 70 Ark. 204 (66 S. W. 926). But the better rule, and the one most consonant with reason, is that the communications are not, because confidential in character, incompetent as evidence for or against the person making them. The applicable language of the statute —it is declaratory of the common law (*Hagerman* v. *Wigent*, 108 Mich. 192 [65 N. W. 756]) is:

"Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage. * * *" 3 Comp. Laws, § 10213.

This has not been construed as applying to all communications made by one spouse to the other, but only to those which are confidential in their nature. *Ward* v. *Oliver*, 129 Mich. 300 (88 N. W. 631). The communication is privileged, but it is the privilege of the parties (*Maynard* v. *Vinton*, 59 Mich. 139, 152 [26 N. W. 401, 60 Am. Rep. 276]; *Derham* v. *Derham*, 125 Mich. 109, 112 [83 N. W. 1005]), and may be waived. It is not alone the confidential character of the communication, but it is that and also the relation of the parties which is the foundation of the privilege.

"The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation." 4 Wigmore on Evidence, § 2285.

A communication made by a husband to his wife may be privileged. The same communication made by him to a daughter, or a son, or a sister, is not privileged, although precisely the same reasons in fact may exist for preserving the confidence inviolate. The privilege is in derogation of the general rule that all persons may be compelled to testify concerning facts inquired about in courts of justice. It should be made effective, but ought not to be extended by the courts to cases where there has been no injury to the relation of the parties by the betrayal of the confidence reposed. And so it has been held, and, we think, correctly, that where the communication, oral or written, has, without collusion or voluntary disclosure, escaped the custody and control of the parties communicating or the custody or control of their agents or representatives, it is not privileged. The communication being offered by some one other than the parties thereto, courts have in some instances refused to inquire as to the manner in which it was obtained. The cases are not numerous; the rulings are not harmonious. Some of them are collected in 23 Am. & Eng. Enc. Law (2d Ed.), p. 95 *et seq.* Precisely in point are *State* v. *Mathers*, 64 Vt. 101 (23 Atl. 590, 15 L. R. A. 268, 33 Am. St. Rep. 921); *State* v. *Hoyt*, 47 Conn. 518 (36 Am. Rep. 89); *Gannon* v. *People*, 127 Ill. 507 (21 N. E. 525, 11 Am. St. Rep. 147); *State* v. *Buffington*, 20 Kan. 599 (27 Am. Rep. 193); *Com.* v. *Griffin*, 110 Mass. 181; *Geiger* v. *State*, 6 Neb. 545. See, also, 1 Greenleaf on Evidence (15th Ed.), §§ 254, 254*a*, and notes, and note to *State* v. *Falsetta*, 10 Am. & Eng. Ann. Cas. 177, 179 (43 Wash. 159, 86 Pac. 168). See, generally, 4 Wigmore on Evidence, §§ 2332–2341. The precise question seems never to have been before presented in this court. In *People* v. *Durfee*, 62 Mich. 487 (29 N. W. 109), a deputy sheriff was allowed to testify to a conversation between attorney and client overheard by the witness. In *Cluett* v. *Rosenthal*, 100 Mich. 193 (58 N. W. 1009, 43 Am.

St. Rep. 446), it was held that information obtained by a witness by means of a trespass or other tortious conduct may be received when offered by one not responsible for the tort. These decisions, as well as those which in holding that a privilege is involved refuse the rule that the evidence is under all circumstances incompetent, permit us to adopt and to apply what we have indicated as being in our opinion the correct rule. The letters should have been received in evidence.

4. The court was not in error in refusing to give defendant's first or third request to charge or in refusing to submit to the jury the question whether defendant had waived any of its defenses. The first request has relation to the alleged change of ownership, and has been considered in connection with the ruling refusing an amendment to the notice of special defenses. As to the other requests, we are referred to no authority to support the contention that the levying of a writ of attachment upon land, the buildings appurtenant being insured, there being no change of possession, is such a change in interest or title as avoids the policy of insurance. Ostrander on Fire Insurance (2d Ed.), p. 249. We are not informed by the record that plaintiff knew of the attachments.

The 17th assignment of error, which is that the court erred in failing to submit to the jury the question of whether the defendant had waived any of its defenses, and the 19th assignment, which is substantially the same, are too general. However, they are in effect mere repetitions of those already considered.

The court submitted to the jury one question of fact, which was: Did the fire occur by or through the intentional agency of the plaintiff? Upon the part of the appellee it is contended that because the policy of insurance was payable to the Lenawee County Savings Bank as its mortgage interest might appear, with the provision that as to this interest the insurance should not be invalidated by any act or neglect of the mortgagor or the owner of the property, because the bank after the fire assigned to plain-

tiff and she in one count of her declaration declares as such assignee, therefore the judgment should be in any event affirmed.   It appears that the mortgage liens of the said bank exceeded in amount the face of the policy of insurance.   We think the question is not properly before us for decision.   It did not appear to have been presented in the court below, and, in any event, it was not there determined.   On the contrary, the case was determined upon an entirely different theory of plaintiff's right.

The judgment is reversed, and a new trial granted.

Blair, C. J., and Montgomery, Hooker, and Brooke, JJ., concurred.