BOYCE *v.* McKENNA.

1. EVIDENCE—ANNULMENT OF MARRIAGE—DOCUMENTARY EVIDENCE OF FOREIGN MARRIAGE—ADMISSIBILITY.

In proceedings by a wife for the annulment of her marriage to defendant on the ground that he had, at the time, a lawful wife living in Ireland, a certified copy of the matrimonial register of the parish of the Catholic church showing said marriage to have been performed, *held*, admissible in evidence.

2. SAME—IDENTITY.

Evidence as to the identity of the parties, *held*, sufficient.

3. ANNULMENT OF MARRIAGE—FRAUD—VOLUNTARY COHABITATION—STATUTES.

Plaintiff's voluntary cohabitation with defendant, after hearing that he had a former lawful wife living, would not bar her relief, in annulment proceedings, under 3 Comp. Laws 1915, § 11425, where it appears she did so in reliance upon his assurance that it was untrue, and as soon as she became satisfied, after investigation, that it was true, she left him.

4. SAME—EVIDENCE—ADMISSIONS AND CONFESSIONS—STATUTES.

The original statute having been amended by striking out the words referring to the annulment of a marriage, the provision in 3 Comp. Laws 1915, § 11428, that no decree of divorce shall be made solely on the declarations, con-

On presumption as to capacity flowing from marriage ceremony, see note in 16 L. R. A. (N. S.) 100.

fessions, **or** admission of the parties does not apply in proceedings for the annulment of a marriage.

5. MARRIAGE—AUTHORITY OF ONE OFFICIATING PRESUMED.

The authority of the officer or clergyman shown to have performed a marriage ceremony will be presumed, in the absence of any showing to the contrary.

6. SAME—LEGALITY PRESUMED.

Where a marriage ceremony is shown, every presumption will be indulged that it was legally performed.

7. SAME—LAWS OF FOREIGN STATE—PRESUMPTIONS.

There is no presumption that the marriage laws of another State or country are different from the laws obtaining in the forum.

8. EVIDENCE—ANNULMENT OF MARRIAGE—ADMISSIONS OF SPOUSE—ADMISSIBILITY.

In the absence of statutory exception, admissions of the spouse, who is alleged to have contracted the prior marriage, are admissible in evidence.

9. ANNULMENT OF MARRIAGE—EVIDENCE—SUFFICIENCY.

Evidence of prior marriage, *held*, sufficient to sustain decree of annulment.

Appeal from Wayne; Webster (Arthur), J. Submitted June 10, 1920. (Docket No. 53.) Decided July 20, 1920.

Petition by Hester Boyce against Joseph H. McKenna for the annulment of a marriage. From a decree for plaintiff, defendant appeals. Affirmed.

*Jefferson G. Thurber,* for plaintiff.

*Riggs & Baxter,* for defendant.

STONE, J. The petition, in this case was filed by plaintiff to obtain a decree for the annulment of the marriage between the plaintiff and defendant, because of the prior marriage of the defendant. From a decree granting plaintiff the relief prayed for, the defendant has appealed.

It appears undisputed that plaintiff and defendant were ceremonially married in the city of Jersey City, State of New Jersey, on September 8, 1915, the plaintiff being then 20 years of age and the defendant 42 years old. Soon after this marriage the parties returned to Ireland, the place of their nativity, and took up their residence in the city of Belfast in September of that year. While living there together, and in the month of November following, a woman claiming the name of Anne Jane McKenna came, with an 11-year-old child, to their home, and claimed to be the lawful wife of the defendant, and proceeded to make a disturbance in the plaintiff's home. The parties separated for a short time, but the plaintiff believing the statement of the defendant that the woman, Anne Jane, was not his wife, the parties resumed marital relations for a time. Later the woman appeared a second time, and after this occurrence, plaintiff went to the home of her parents in Garvah, Ireland, and in September, 1916, emigrated to this country and State. Plaintiff then made inquiry by letter to the parish priest of Magherafelt, Ireland, who forwarded to her what purported to be a copy of the matrimonial register of his parish, being a certified copy of the record of marriage of Joseph McKenna to Anne Jane McKeown. Upon this evidence the plaintiff brought this proceeding to annul her marriage with the defendant. To sustain her petition the plaintiff offered two classes of evidence; the first consisting of admissions or statements by the defendant that he had been married to the woman Anne Jane; and, second, the certified copy of the record consisting of the matrimonial register of the parish of the Catholic church at Magherafelt, aforesaid. The testimony of the plaintiff relating to the admission of the defendant, after referring to the visit of the said Anne Jane, with the child, claiming that she was the lawful wife of the defendant, is as follows:

"He told me when she came to me the second time that he married her in the Catholic church, but at midnight, which was against the laws of the Catholic church. I don't know whether it was or not, but that is what he told me. They were married at midnight and he was under the influence of drink then.

"*Q.* He was under the influence of what?

"*A.* Drink.

"*Q.* Drink when he married her?

"*A.* Yes, that is what he told me.

"*Q.* Did he specifically mention at that time that the name was Anne Jane McKenna?

"*A.* Yes, sir; McKeown he said it was."

She further testified that defendant said he "figured on getting a divorce when the war was over."

In addition to this there was the testimony of the witness Joseph Houghton, who testified as follows:

"I live at 185 Midland avenue, Highland Park, have lived there for some time. I have known Joseph McKenna since last June. He has talked over his private matters with me, and at that conversation he told me he was married to Anne Jane McKeown while under the influence of liquor, and his people never recognized it.

"*The Court:* What?

"*A.* His people never recognized it.

"*Plaintiff's Counsel:* I did not get all that.

"*A.* He told me he was married while under the influence of drink to Anne Jane McKeown, and his people never recognized it."

The defendant was sworn in the case, and denied having made the statements above testified to, and he denied that he had ever been married to the woman, Anne Jane McKeown. The documentary evidence above referred to consisted of the following:

EXHIBIT C.

"CATHOLIC CHURCH, MAGHERAFELT.

(seal)       "E LIBRO MATRIMONIALI

"Having examined the matrimonial register of this parish I find that JOSEPH MCKENNA and ANNE JANE

McKEOWN, the witnesses being John Dysart and M. A. O'Hagan of Magherafelt, were married on 11th day of January, 1887.

(Signed)    "JOHN CANON QUINN, Parish Priest,
"Magherafelt, Ireland."

## EXHIBIT D.

"REGISTRATION OF ROMAN CATHOLIC
MARRIAGES IN IRELAND.

"26° and 27°                 Victoria, Chapter 90,
"Certified Copy of Entry in the Marriage Register Book, Deposited
in the Superintendent Registrar's
Office—(See Endorsement).

| No. | When married. | Name and surname. | Age. | Condition. |
| --- | --- | --- | --- | --- |
| (1) | (2) | (3) | (4) | (5) |
| 16 | 11th Jan., 1887 | Joseph McKenna | full age | Bachelor |
|  |  | Anne Jane McKeown | 20 yrs. | Spinster |

| Rank or Profession | Residence at the time of marriage | Father's name and surname. |
| --- | --- | --- |
| (6) | (7) | (8) |
| Seaman | Magherafelt | Charles McKenna |
| Housekeeper | Magherafelt | Thomas McKeown |
|  | (P. D.) | Deceased |
|  |  | (P. D.) |

Rank or Profession of Father.
(9)
Butter and Egg Merchant.
Butcher.

"Marriage No. 16, registered by me, this 31st day of January, 1887.

(Signed)    "AGMAR R. VOSEY,
"Registrar.

"Married in the Roman Catholic chapel of Magherafelt, according to the rites and ceremonies of the Roman Catholic church, by me,

"P. CARRON DONNELLY, P. P.

"This marriage was
solemnized between us
{ JOSEPH McKENNA,
{ ANNE JANE McKEOWN.
"In the presence of us
{ JOHN DYSART,
{ MARIANNE O'HAGAN.

"I hereby certify that the foregoing is a true copy of the entry No. 16, in the marriage register book in my office.

"JOHN A. HIGGINS,

"Superintendent Registrar of

Births, Deaths and Marriages

For the District of

Magherafelt.

"Office, Union, Magherafelt.
"Date: 5th October, 1918.

Canadian<br>One Penny<br>Stamp.

(Endorsement)

"Registration of Roman Catholic Marriages in Ireland.
"26 & 27 Vic., Cap. 90.

"SEC. 18.—'Every Superintendent Registrar shall cause Indexes of the Register Books in his Office to be made and kept with the other records of his office. Every person shall be entitled, on such days and at such reasonable hours as shall be directed by the Registrar-General, to search the said Indexes, and to have a certified copy of any entry or entries in the said Register Books, under the hand and seal of the Superintendent Registrar on payment of the fees hereinafter mentioned; that is to say, for every General Search the sum of Five Shillings, and for every Particular Search the sum of One Shilling, and for every certified copy the sum of Two Shillings and Sixpence, in addition to the Stamp Duty of One Penny imposed by an Act passed in the twenty-third year of Her Majesty, Chapter Fifteen.'*

"*This Duty is now payable under the 54 and 55 Vic., cap. 39 (Stamp Act, 1891).

"CONSULAR CERTIFICATE.

"United Kingdom of Great Britain & Ireland, } ss.
  City & County of Londonderry. '

"I, Philip O'Hagan, Consular Agent of the United States of America, at Londonderry, Ireland, do hereby certify and make known that John A. Higgins, whose true signature appears on the certificate of marriage on the other side hereof, written in the Register of Births, Deaths and Marriages, at Magherafelt, in the said County of Londonderry, Ireland. That the said certificate of the marriage solemnized between Joseph McKenna and Anne Jane McKeown, and so signed by the said John A. Higgins, as such Registrar as aforesaid, is issued in accordance with the Statutes governing the issuance of such certificates in

211—Mich.—14.

Ireland. And that the said certificate of marriage is worthy of all faith and credit in Judicature and thereout.

"In testimony whereof, I have hereunto set my hand and affixed my seal, this seventeenth day of December, in the year of our Lord One Thousand Nine Hundred and Eighteen.

(Seal)                    (Signed)   "PHILIP O'HAGAN,
                                      "American Consular Agent
    "American                        at Londonderry, Ireland.
Consular Service
      $2
   Fee Stamp
Act No. 171
   Register Vol. 3
      Page 155
            "P. O'H."

The defendant, in his testimony, stated that his father's name was Charles McKenna; that he had been, and was at the time of the alleged marriage, a seaman, and that John Dysart, who purports to have been a witness to said first marriage, was an acquaintance and friend of his and that the witness "used to knock about with him." He also testified that he had been connected with the Roman Catholic church in Magherafelt when he lived there, and that he was acquainted with Canon Donnelly, who purported to have performed the said marriage ceremony, and also with Canon Quinn, who made the certificate, Exhibit C. The testimony upon that subject was as follows:

"*Q.* Did you know Canon Donnelly when you lived there?
"*A.* Yes, sir.
"*Q.* You knew him very well, didn't you?
"*A.* I knew him.
"*Q.* You knew Canon Quinn, didn't you?
"*A.* Yes, he is there, I think.
"*Q.* He is there now?
"*A.* I think so.
"*Q.* Has been for a number of years?
"*A.* Oh, no, only three or four years.
"*Q.* You knew him very well?
"*A.* I knew him to see him."

There seemed to be no question about the identity of the woman Anne Jane. The defendant testified that he knew her well, and that she claimed he was the father of her child, and he testified to his affection for this child and his assistance in supporting it. He said: "I am looking after the child." We refer to this simply as bearing upon the question of identity of the parties, which seems to be a point urged by counsel for the defendant.

The court admitted the documentary evidence against the objection of defendant's counsel, who claimed that it was not admissible without further proof that the records were required by law, and that the registrar was such in fact, and that the registrar's signature was genuine. It was also urged, as a further objection, that there was no evidence that the person who purports to have performed the marriage ceremony was authorized so to do. There was a further contention that, in the event that the certificate introduced by the plaintiff was admissible, such certificate was not sufficient to establish that this defendant was married without proof *aliunde* of the identity of the parties, and authorities in other jurisdictions are cited in support of this position.

As we have already said, we are of the opinion that there was sufficient evidence in the record showing the identity of the parties. The name of the father of the defendant, the occupation of the defendant, his acquaintance with one of the witnesses to the alleged marriage, his acquaintance with the parish priests, his acquaintance with this woman, and the fact that she charged him with being the father of her child, for which child he claimed to have great affection; these, we think, were all evidences of identity.

It was urged in the court below, but no point seems to have been made of it in the brief of appellant in this court, that under the provisions of section 11425,

3 Comp. Laws 1915, the marriage should not be annulled because of the voluntary cohabitation of the parties as husband and wife. We think the answer given in the opinion by the learned circuit judge, herein quoted, is supported by the testimony, and fully sustains the position of the court.

Attention was also called to section 11428, 3 Comp. Laws 1915, which provides that no decree of divorce shall be made solely on the declarations, confessions or admissions of the parties; but the court shall require other evidence of the facts alleged in the bill for that purpose. It will be borne in mind that this is not a bill for divorce, but is one for the annulment of this marriage. The section last referred to is the result of an amendment made in 1883. Prior to that time the statute had read: "No decree of divorce, or of the nullity of a marriage shall be made solely," etc., and the words "or of the nullity of a marriage" were stricken out of the statute; so the prior decisions upon the subject are no longer pertinent, and this rule does not apply to a bill or petition for the annulment of a marriage. The concluding portion of the opinion of the court below is as follows:

"To my mind, the whole question of whether the former marriage of the defendant has been proved hinges upon the admissibility and force of the certified copy of the marriage records from the Roman Catholic chapel of Magherafelt, Ireland, and to my mind, the case of *Hunt* v. *Order of Chosen Friends*, 64 Mich. 671, decides this question in favor of its admissibility and evidentiary force.

"I am, therefore, of opinion that the plaintiff, under the proofs introduced in this case, has proven a previously existing marriage.

"The defendant also cites section 11425 of the Compiled Laws providing that a marriage shall not be annulled on the grounds of force or fraud, when it appears that, at any time before the commencement of suit, there was a voluntary cohabitation of the parties as husband and wife.

"While it is true that the plaintiff continued to live with the defendant after the charges had been made by Anne Jane McKenna or McKeown, in Belfast, her testimony is that she did so because she had faith in the defendant, and relied upon his assurances that the woman was not his wife; and she further testified, in effect, that as soon as she secured the proofs to satisfy her that the defendant was misrepresenting the facts to her, from that time on she had nothing further to do with the defendant.

"Under those circumstances, I do not believe that the section of the statute cited will prevent the plaintiff from obtaining relief in the present case. It follows that the prayer of the plaintiff will be granted."

In support of the ruling of the court admitting the record in evidence, we also cite the case of *Hutchins* v. *Kimmell*, 31 Mich. 126. In that case, after referring to the certificates, this court, speaking through Justice COOLEY, said:

"All these certificates were objected to when offered, on various grounds, which in the argument in this court, are narrowed down to the following: *first*, because they were not accompanied by any proof of the foreign law regulating marriages in Wurtemberg; and, *second*, because it is not sufficient that a ceremony was performed purporting to be a marriage, unless it is also shown that such ceremony was recognized by, and in accordance with the law of the country where it took place. * * *

"And in the case of *People* v. *Calder*, 30 Mich., at page 90, it was said of a marriage contracted in another State:

"'Where the evidence shows that the parties appeared at a church, and that the officiating minister then publicly and in the presence of other persons in attendance, performed a ceremony of marriage between such parties, and further, that the parties appeared to regard themselves as then married, it is fairly to be presumed, in the absence of anything to the contrary, that the ceremony was regular and legal, although the evidence fails to show what words were used by the parties or the minister, or the particulars of the ceremony, or what specific

kind of ceremony was or would be according to the forms, usages or customs of such church.'

"This is likewise the doctrine of *Steadman* v. *Powell*, 1 Add. 58, where the proof of an Irish marriage did not go beyond that which was made in this case, and did not negative the fact that the celebration might have been by a Popish priest, which, by the local law, would have rendered it invalid. It has been held in this State that the common law as it exists among us, will be presumed to prevail in a foreign country in the absence of proof to the contrary,— *High,* Appellant, 2 Doug. 515; *Crane* v. *Hardy,* 1 Mich. 56; and though it may be questionable if this doctrine is to be applied universally, it cannot be disputed that the reason of it is applicable to all marriages celebrated in Christian countries, in which it may properly be assumed that a general common law on the subject of marriage still prevails. Whart. Confl. L. § 171. And as has been well said, the inconvenience of adhering to more rigid rules in the proof of foreign marriages, would in a country so largely populated by immigrants as is ours, be peculiarly great, and put courts and litigants to useless trouble and expense in every instance. Bish. Mar. & Div. (4th Ed.) § 528."

It has been held that the authority of the officer or clergyman shown to have performed a marriage ceremony will be presumed in the absence of any showing to the contrary. This is in accordance with the rule, that where a marriage ceremony is shown every presumption will be indulged that it was legally performed. 18 R. C. L., title "Marriage," § 21, and cases there cited; also §§ 39, 51, 55, 56.

The law and public policy favor matrimony, and when the celebration of a marriage is shown, the contract of marriage, the capacity of the parties, and in fact everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed. It will be presumed that the person assuming to officiate at the ceremony was authorized to perform it. *Smith* v. *Fuller,* 138 Iowa, 91 (115 N. W. 912, 16 L. R. A. [N. S.] 100).

If a marriage ceremony is proved, it is presumed that the celebrant was duly authorized. *Franklin* v. *Lee,* 30 Ind. App. 31; *Hutchins* v. *Kimmell, supra.*

In *Lanctot* v. *State,* 98 Wis. 136 (73 N. W. 575), it is said:

"The law relating to proof of foreign marriages seems to be that where a formal ceremony of marriage solemnized in a church by a person assuming the office of a priest or minister is shown, it will be presumed, in favor of the marriage, that it is in accordance with the law of the country, and valid." Citing many cases, including *Hutchins* v. *Kimmell, supra,* and *People* v. *Loomis,* 106 Mich. 250.

In 26 Cyc. p. 878, the following language is used:

"There is no presumption that the marriage laws of another State or country are different from the laws obtaining in the forum."

It is also there stated, at page 896 of the same volume, as a general rule, that where there is no statutory exception, admissions of the spouse who is alleged to have contracted the prior marriage are admissible in evidence.

In our opinion there was before the court in the admissions, supported by the record of marriage, sufficient evidence of the fact of the prior marriage of the defendant, and the decree of the court below is therefore affirmed, with costs to the plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.