UNITED STATES

v.

KELSEY–HAYES WHEEL CO. et al.

Civ. A. No. 10655.

United States District Court

E. D. Michigan, S. D.

April 16, 1954.

462

John W. Neville, Chief, Detroit Office, Antitrust Division United States Department of Justice, Franklin C. Knock, John J. Mulvey, Paul A. Owens, Bernard Manning, James A. Broderick, Detroit, Mich., for United States.

Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich. (Rockwell T. Gust, Victor W. Klein, Philip T. Van Zile, II, Detroit, Mich., of counsel), for Kelsey-Hayes Wheel Co.

C. Brewster Rhoads, Philadelphia, Pa. (John F. Headly, Joseph W. Swain, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Lester P. Dodd, A. Stewart Kerr, Crawford, Sweeny, Dodd & Kerr, Detroit, Mich., of counsel), for The Budd Co.

Ballard, Jennings, Fraser & Parsons, Everett R. Trebilcock, Lansing, Mich., for Motor Wheel Corp.

LEVIN, District Judge.

There are two motions before the Court in this civil antitrust action. First, there is a motion by the defendant, Kelsey-Hayes Wheel Company, joined in by the other defendants, seeking the production of statements of witnesses, reports of investigations and other communications which were prepared by the Federal Bureau of Investigation, under the direction of the Government attorneys and in anticipation of a prosecution for violations of the antitrust laws. These materials are now a part of the work files used by the Government attorneys in the trial of this lawsuit.

Under the doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451, such work files of an attorney, assembled in preparation for a lawsuit, are protected against the deposition-discovery provisions of the Federal Rules of Civil Procedure, 28 U.S.C.A. The functions which were here performed by the Federal Bureau of Investigation in gathering these materials were no different than those that might be performed by the associate members of any large law firm. Just because departmentalization in the preparation of a lawsuit is required in the administrative operations of the Government, is no reason for denying to the Government's attorneys their professional prerogatives. See Alltmont v. United States, 3 Cir., 177 F.2d 971, 976. These Federal Bureau of Investigation materials are to

be distinguished from the routine reports of both claim agents and inspectors, civilian or Government, which are made in the regular course of business operations and do not involve the inherent privilege of professional privacy with which we are here concerned.

This is not to say that all materials which find their way into an attorney's work files are immune from disclosure. Attorneys' files are not to be used as the burial ground for competent items of evidence which are relevant to the issues. In each case we must arrive at an accommodation which will make the proper material available on the showing of good cause and yet will preserve privacy for an attorney's work files insofar as consistent with justice.

There are, I understand, signed statements of witnesses to be found among the documents whose disclosure the Government resists. In the conventional case in which the Government is asserting a proprietary or financial claim, such statements ought to be produced since they would be admissible either to impeach the Government's witnesses or to corroborate movant's witnesses. They are usually proximate in time to the events described, and they have an independent and objective quality which distinguishes them from memoranda and notes of what a witness said, which the Government attorneys or their assistants have made in the course of an interview. The latter material is subject to the usual infirmities of secondhand testimony and conceivably might require the Government attorneys and their assistants to testify as witnesses, a result not conducive to the orderly and dignified conduct of a lawsuit. The movant has a far more difficult burden in showing good cause for such material.

 But the determination of what ought to be produced, made in an ordinary civil case, must be re-evaluated in an antitrust proceeding such as this. This is an action brought by the Government in the public interest to assist in the enforcement of laws of concern to the public welfare. Under such circumstances the public interest demands that the trust and confidence of those who have supplied information to Government investigators be protected. Whether one speaks favorably or unfavorably of defendants, the assumption underlying an informant's communication is that he speaks to Government investigators in confidence. United States v. Kohler Co., D.C., 9 F.R.D. 289; United States v. Deere & Co., D.C., 9 F.R.D. 523. To require the Government to produce all the signed statements it has obtained would reveal the identities of those who have assisted the Government's investigations. These informants, most of whom may have commercial relations with defendants, might then be vulnerable to commercial pressures, either by way of reprisal or to influence their testimony. Even if they will be called as witnesses and their identities ultimately revealed, the Government should not at this early date be required to commit itself or to disclose the names of its witnesses.

If at the time of trial the Government does seek to present any of such informants as witnesses, it will at such time voluntarily have lifted the cloak of confidence. Then, I shall require the Government to furnish to defendants, at least twenty-four hours in advance of the witness' presentation, all signed statements of such witness. Furthermore, the usual consideration will be given to litigants who show that they have been surprised by the presentation or testimony of any witness and who require time to prepare counter testimony.

 In effect, the defendants have failed to sustain the burden of showing that the present production of these documents will make a net contribution to the fair and expeditious trial of this lawsuit. Since defendants know better than anyone else those with whom they

had business dealings in the relevant period and since the defendants are all corporations of substantial worth, they are as capable of interviewing such witnesses as were the Government representatives. They are well able to obtain on their own account such evidence as they now request without doing violence to the persuasive considerations which weigh against compelling the Government attorneys to give defendants access to their files. This motion is, therefore, denied.

Next, plaintiff has requested the defendant, The Budd Company, to admit, pursuant to Rule 36, Federal Rules Civil Procedure, the genuineness of some thousand documents. Budd has objected to this request as regards twenty-nine of these documents, citing that they are communications to and from its house patent counsel and are, therefore, entitled to the privilege arising out of the attorney-client relationship. I do not think this claim of privilege ought to be recognized.

Some time before the present suit against Budd and the other defendants was commenced, representatives of the antitrust division of the Department of Justice called upon the appropriate officials of Budd and requested permission to examine the company files. Budd was informed that the request was being made in connection with an investigation of alleged violations of the antitrust laws in the production and distribution of wheels and rims for motor vehicles. After a short delay, apparently while the matter was discussed with other officials of the corporation, the plaintiff was given access to Budd's files both in Detroit and in Philadelphia, where its general offices are situated. In the course of this investigation of Budd's voluminous files, the plaintiff lifted some thousand documents, photostatic copies of which were prepared either by plaintiff or by Budd, for plaintiff's use. The twenty-nine documents claimed to be privileged were among those thousand.

■ The privilege against disclosure granted to certain communications between attorney and client is grounded upon the desire to promote freedom of consultation of legal advisers by clients. It does not extend to every communication between lawyer and client but only to those as to which there is an intention of confidentiality.

"The reason for prohibiting disclosure * * * ceases when the client does not appear to have been desirous of secrecy. 'The moment confidence ceases,' said Lord Eldon, 'privilege ceases.' This much is universally conceded." Wigmore, 3d Ed., Sec. 2311, p. 600.

■ And even though the privilege may once have attached, that does not mean that the subject matter of the communication is forever immune from being used as evidence. The cloak of confidence may be lifted by subsequent events, with or without the concurrence of the party claiming the privilege. If the client waives the privilege at a first trial, he may not claim it at a subsequent trial, because after the first publication the communication is no longer confidential and there is no reason for recognizing the privilege. See 79 A.L.R. 173, 176–179 (annotation discussing "minority" and "majority" cases). Similarly, the privilege does not apply where a third person overhears the conversation without the knowledge of the client or surreptitiously obtains possession of a document in original or copy, Wigmore, 3d Ed., Sec. 2326, p. 630, because there is no longer any confidence to preserve. See also O'Toole v. Ohio German Fire Insurance Company, 159 Mich. 187, 193, 123 N.W. 795, 24 L.R.A.,N.S., 802 (discussion of analogous privilege of husband and wife).

■ Thus, even if the privilege once attached to these twenty-nine documents, it was lifted when Budd voluntarily made them available to the Government. Plaintiff now knows the con-

tents of the documents and has photostatic copies of each of them. As a result of the claimant's own acts, the context in which the rule is intended to serve, the protection of confidential communications, is no longer present. Since the privilege exists in derogation of the overriding interest in full disclosure of all competent evidence, where the policy underlying the rule can no longer be served, it would amount to no more than mechanical obedience to a formula to continue to recognize it.

Even if I were to hold that Budd is privileged to refuse to make the requested admissions of genuineness, plaintiff would still be able at the time of the trial to offer the copies in its possession and to attempt to prove their genuineness. I find no difficulty in making a choice where the alternatives that confront me are to support a privilege that no longer serves a purpose or to give effect to Rule 36 so as to avoid laborious and time-consuming efforts at the time of the trial.

Nor is this result affected by Budd's assertion that the privileged documents were inadvertently handed over to the Government's representatives; that the mass of documents in its files were so voluminous that it did not know nor did it have time to discover that privileged ones were among them. It is difficult to be persuaded that these documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made. One measure of their continuing confidentiality is the degree of care exhibited in their keeping, and the risk of insufficient precautions must rest with the party claiming the privilege. Wigmore, 3d Ed., Sec. 2325, p. 629.

Brief mention ought to be made of the additional objection raised by Budd based upon the privilege arising under the work-product rule, claimed for four of the documents. These documents appear to be memoranda of law or reports of conferences. Even if prepared in anticipation of litigation, the documents must presently be part of the work files of an attorney before they are entitled to the protection of the work-product rule. These particular documents were apparently circulated among the interested officials of Budd and it does not appear that they resided in the patent counsel's work files when pulled by the Government's representatives. They do not, therefore, qualify for the special protection afforded by that rule. In any event, the cloak of privacy having been voluntarily lifted by Budd, there is no longer any reason to invoke the rule.

An order consistent with the views here expressed may be presented for signature.