## The People v. Andrew G. Calder.

*Polygamy: Information: First marriage: Place: Variance.*    Where an information for polygamy alleges the first marriage to have taken place at Brooklyn, New York, evidence of such marriage in the city of New York is not objectionable on the ground of variance where it does not appear that the defendant was misled.

*Evidence: Statutes of other states: Marriage: Changes in statutes.*    Under our statute (*Comp. L.*, § 5935) admitting as *prima facie* evidence printed copies of the statutes, etc., of any of the United States, if purporting to be published under the authority of the proper government, the revised statutes of 1852, of New York, are held admissible as *prima facie* evidence of the law of marriage in that state in 1869, in the absence of any showing that any changes have intervened.

PEOPLE v. CALDER.

*Marriage: Evidence: Ceremony: Presumptions.* Evidence that parties appeared at a church, that the officiating minister, publicly and in the presence of other persons in attendance, in fact performed a ceremony of marriage between such parties, and that the latter appeared to regard themselves as then married, will raise a presumption, in the absence of any evidence to the contrary, that the ceremony was regular and legal, though there be no proof of the particulars of the ceremony, or of the specific requisites of a lawful marriage ceremony according to the forms and usages or customs of such church.

*Heard July 15.    Decided July 21.*

Exceptions from the Recorder's Court of Detroit.

*Isaac Marston, Attorney General,* for the People.

*C. B. Howell* and *Chipman, Dewey & Hawes,* for respondent.

GRAVES, CH. J.

This case comes up on exceptions before judgment. The defendant was convicted in the recorder's court of the city of Detroit, on an information for polygamy.

The information charged the defendant with having intermarried with Louisa C. Poole on the 28th of September, 1869, at the city of Brooklyn, in the state of New York, and during the continuance of that marriage, and on the 24th day of June, 1873, with having married Mary Ida Calder, at Detroit.

By the evidence it appeared that the fact relied on as a first marriage occurred in the city of New York, and not in Brooklyn, as stated in the information, and this variance is suggested in argument as possibly material.

We do not deem this objection of any weight. The particular place in the state of New York where the first marriage occurred was not a substantial ingredient of the charge, and the failure to prove it literally as laid, did not expose the case to any serious objection.

The material point was, that the marriage occurred within the territorial dominion of New York. Because the quality of the fact in reference to the alleged offense

depended, not upon its having occurred in any specific locality within the state, but upon its having actually happened under the influence of the laws there.    There is no reason to suppose that the defendant was in the least misled.    If he was, he should have made the fact known, in which case the court, no doubt, would have prevented his being prejudiced by the misstatement in the information. We observe that no objection whatever, on the ground of variance, was taken to the evidence, and it does not appear by the record that the point was suggested to the court below at any time.

The next point concerns the validity of the evidence of the New York marriage.

It is contended for defendant that there was no proper evidence that the marriage was according to the laws of that state.

By the positive law of this state, printed copies of the statutes and resolves of any of the United States, if *purporting to be published under the authority* of the proper government, are required to be admitted in all proceedings in our courts as *prima facie evidence.*—§ *5935, Comp. L.* The same rule is laid down in New Hampshire, without the aid of statute.—*Emery v. Berry, 8 Fos., 473.*

In the present case, Mr. Romeyn, an attorney and counselor of this court, produced upon the stand a printed volume, purporting to be one of the revised statutes of New York, and dated in 1852, and he identified it as such.

The book purported to contain the statutory regulations of the state on the solemnization of marriage, as such regulations existed in 1852, and the counsel for the defendant objected to the introduction of the volume on the ground that it was not competent, and for the reason that Mr. Romeyn was not shown to have any special knowledge on the subject.

The import of this objection is not very clear, but we shall notice the grounds of it as we understand them.

It is said that this publication of 1852 was not proper to show what was the law in 1869.

The witness, Mr. Romeyn, before the book was admitted, was interrogated at considerable length as to his knowledge whether the legislature of New York had made any change between 1852 and 1869, and he testified that he could not state positively that none had occurred. The fair inference, however, from his evidence, was that if any change had been made he would have been likely to have known of it, and that he was not aware of any alteration.

The court admitted the volume, and the defendant's counsel excepted.

I am of opinion that the ruling was correct. It would seem that the book, as it stands described in the record, was within the provision before cited. It appeared to be a volume of New York statutes, published by authority of the state, and possessing this character of identity and authenticity, it approved itself as an item which was admissible.—*People v. Lambert, 5 Mich., 349 ; Merrifield v. Robbins, 8 Gray, 150 ; Inhabitants of Woodstock, v. Hooker, 6 Conn., 35 ; Hale v. N. J. Steam Navigation Co., 15 Conn., 539 ; Emery v. Berry 8 Fos. (N. H.), 473.*

The prosecution, however, did not stop with the evidence which the volume itself afforded of its character and genuineness. Mr. Romeyn was specially interrogated on the subject, and his testimony went to fix its credit.

It is not necessary to consider here whether in any case the length of time between the date of the offered publication or law and the event supposed to be affected by the law, might not be so great as to justify a presumption that the law must have undergone a change in the interim; but, except in case of some presumption of that kind, if any should be thought permissible, such matter cannot be rightly excluded on an objection that it affords no evidence of what the law of the foreign state was when the event in question happened.

When the book is admitted, it is only *prima facie evidence*, and it is still open to make proof that changes and alterations have intervened. We know very well that the statutory regulations respecting the solemnization of marriage are not

often changed, and hence do not share with many other subjects in the fluctuations peculiar to modern legislation. There are few matters within the range of legislation in regard to which there is equal stability. In the case before us there was not, I conceive, such length of time as to lead to any suspicion of material alterations; and I think the jury might fairly presume that the law, as it was in 1852, continued to 1869, and more especially as the evidence of Mr. Romeyn tended in that direction, and the defendant offered no proof to indicate any thing to the contrary.

It is next objected that, supposing the law of New York in 1869 to have been well proved by the volume given in evidence, still no valid marriage, according to that law, was shown.

According to the enactment given in evidence, marriages are allowed to be solemnized by ministers of the Gospel and priests of any denomination, and in case of solemnization by a minister or priest, it must be according to the forms and customs of his church or society, and there must be one witness, at least, present besides the person officiating.

The witness Jennie Poole testified that she is a sister of Louisa, the person alleged to have been married to defendant; that she was with the defendant and her sister Louisa on the evening of the 28th of September, 1869, at the Eighteenth Street Methodist Episcopal Church, in the city of New York, where she had formerly attended; that she then and there witnessed the marriage of defendant with her sister Louisa C. Poole; that the ceremony was performed by the Rev. Lucas King, who was then the officiating minister there; that the marriage was public, and that she saw a certificate made of it. Further evidence was given by this witness, and also by the Rev. Mr. Blades, tending to show that Mr. King was at the time a minister of the Methodist Episcopal church, and Miss Poole testified that following the marriage the defendant and her sister lived together as husband and wife until the 14th of August, 1872.

This evidence was sufficient to require the jury to pass

30 MICH.—12.

upon the question of marriage. It tended to show the fact of a regular marriage under the law put in evidence.

The defendant made no attempt to elicit evidence as to the particular forms or incidents of the ceremony, but allowed the case to go to the jury on the general statements respecting it. He now objects that the particulars were not shown, and insists that it does not appear that the minister observed any form. In *Fleming v. The People, 27 N. Y., 329,* which was a case of bigamy, and where a similar objection was made, the court, by Judge Denio, said: "There is no force in the position that the prosecution was obliged to prove the language used by the married parties and *the officiating clergyman* on the occasion of the marriage ceremonies. *Prima facie* the fact of a marriage, celebrated according to the forms of a religious denomination, embraces the requisite assent of the married parties to take each other as husband and wife; *and if the party whose interest it is to dispute the marriage, is satisfied with a general statement of the ceremony, and will not inquire more particularly as to what took place,* he cannot be permitted to *deny the apparent effect of the evidence."*

This appears to me sensible and just. Where the evidence shows that the parties appeared at a church, and that the officiating minister then publicly, and in the presence of other persons in attendance, in fact performed a ceremony of marriage between such parties, and further, that the parties appeared to regard themselves as then married, it is fairly to be presumed, in the absence of any thing to the contrary, that the ceremony was regular and legal, although the evidence fails to show what words were used by the parties or the minister, or the particulars of the ceremony, or what specific kind of ceremony was or would be according to the forms, usages or customs of such church.

None of the exceptions appear to be well taken, and it must be certified to the recorder's court to proceed to judgment.

The other Justices concurred.