CHARLES KOPKE V. THE PEOPLE.

*Bigamy—Information.*

An information for bigamy is not bad for merely omitting to allege the exceptions to the statute and negative their existence, if it avers both marriages and sets forth that the first wife was living when the second marriage took place.

In an information for bigamy the averment of the first marriage is presumed to intend a lawful marriage, which the prosecution must prove; and the averment that the second marriage was felonious is sufficient without also charging it to have been unlawful.

Foreign statutes should, when possible, be proved as provided for in the State laws and the Acts of Congress rather than by the testimony of a lawyer who has practiced within the jurisdiction where they are in force.

A civil marriage performed under a license irregularly issued, and under such circumstances that all concerned must be presumed to know that it gave no authority, cannot furnish ground for a prosecution for bigamy if not based on the voluntary consent of both parties, or followed by cohabitation or some recognition of a marriage entered into in good faith.

Positive evidence of non-assent to a marriage ceremony that had been irregularly performed weighs against the presumption of its validity.

Error to Recorder's Court of Detroit. Submitted January 22. Decided February 11.

INFORMATION FOR BIGAMY. Respondent was convicted.

*Charles E. Miller* for plaintiff in error. An indictment must allege all facts necessary to a conviction, *State v. Wilson* 2 Mill 135; *State v. Philbrick* 31 Me. 401; *People v. Aro* 6 Cal. 207; *Markle v. State* 3 Ind. 535; *Dillingham v. State* 5 Ohio St. 280; *State · v. Henderson* 1 Rich. 179; *Tennessee v. Fields* Mart. & Y. 137; and facts not charged will not be inferred, *Mears v. Com.* 2 Grant's Cases 385; an indictment for bigamy should allege the first marriage to have been lawful, *King v. State* 40 Ga. 244; and that the second was unlawful,

*State v. Palmer* 18 Vt. 570; where a statute makes **an** act "willfully and maliciously" done, a crime, it is not enough to allege that it was done "feloniously and maliciously," *State v. Card* 34 N. H. 510; *State v. Delue* 1 Chand. (Wis.) 166; *State v. Roberts* 3 Brev. 139; where a statute creating a crime contains an exception, the indictment must negative it, *Com. v. Maxwell* 2 Pick. 139; *Com. v. Fitchburg Railroad Co.* 10 Allen 189; *State v. Barker* 18 Vt. 195; *State v. Abbey* 29 Vt. 60; all indictments on statutes must state all the circumstances necessary to the definition of the offense therein, *State v. McKenzie* 42 Me. 392; *Com. v. Macuboy* 3 Dana 70; *State v. Stiles* 5 La. Ann. 324; *State v. Porte* 9 id. 106; *State v. Read* 6 id. 227; *State v. Casey* 45 Me. 435; *Ike v. State* 23 Miss. 525; *State v. Gove* 34 N. H. 510; *People v. Allen* 5 Den. 76; *State v. Raines* 3 McCord 533; *State v. Williams* 14 Tex. 98; *Hampton's case* 3 Gratt. 590; *Anthony v. State* 29 Ala. 27.

Attorney General *Otto Kirchner* for the People.

CAMPBELL, J. Respondent Kopke was convicted in the Recorder's court of Detroit of bigamy, the first marriage being alleged to have taken place in Ohio, on the 9th of May, 1879, and the second at Detroit, on the 29th of the same month. Exceptions are alleged on several grounds.

We do not think the information is bad for failure to allege the exceptions to the statute and negative their existence. It avers both marriages, and that the first wife was living when the second marriage took place. It is in the form commonly used and approved by Mr. Archbold. Archb. Cr. Pl. 610. An averment setting out the first marriage must be presumed to intend a lawful marriage, and the prosecution must prove one. We can see no reason for requiring any greater fullness of allegation. As the second marriage is averred to have been felonious, we think it may fairly stand as charged

to have been unlawful. While the word "unlawfully" is generally inserted in conjunction with the term "feloniously," it would be overnice to hold that a felonious act needs any further qualification, or that an information is open to anything but verbal criticism for omitting the double qualification.

The chief complaint of error refers to the rulings of the court below upon the proof of the first marriage. The charge was that if the jury believed the testimony of the witness Edward W. Goddard, and that the statutes of Ohio which had been read to them were the law of Ohio at the time the first marriage was consummated, the marriage was in accordance with the laws of Ohio.

No objection seems to have been made to the proof of the Ohio laws by the testimony of an Ohio lawyer, and no exception is based upon it. While it does not affect the record as now presented, we deem it proper, nevertheless, to suggest that statutes should be proved in a more direct way, and that our laws, as well as the Acts of Congress, make distinct provision on the subject. *People v. Lambert* 5 Mich. 364.

Upon the circumstances of the first marriage there was a conflict of evidence. The defendant in his statement to the jury, which stands like other testimony for their consideration and judgment as to its force, averred circumstances of fraud and duress which would, if believed, have justified a finding against the first marriage, which was not followed by any recognition or acquiescence.

In presenting the case to the jury their attention was directed only to the testimony of the prosecutor's witness Goddard, who acted as justice on the occasion; and the effect of any fraud or other thing tending to negative an intelligent consent was disregarded. Assuming the formalities were apparently followed, the marriage was not necessarily valid.

The case, however, did not show, by Goddard's own testimony, a complete compliance with the laws of Ohio,

as sworn to. One of the conditions preliminary to any jurisdiction in a justice to solemnize marriages, is that the judge of probate, upon such investigation into the facts as satisfies him of its propriety, shall issue and sign a license, and affix the seal of his court to it; and a heavy penalty is imposed where he issues or signs a license without complying with the statutory directions. (Sec. 7 of the law as returned.)

Mr. Goddard's testimony does not touch the facts preceding the appearance of the parties before him. It is undisputed that Miss Marquardt, the person named as first wife, had caused Kopke's arrest before Goddard for bastardy. When brought before Goddard, he says he asked Kopke what he was going to do, and he said he would marry her. Kopke states that he had been told by the constable who arrested him that he would have to marry her or go to the penitentiary. Kopke claims not to understand English, and on his trial in the Recorder's court an interpreter was used. Goddard says that he went up stairs with the man and woman to the office of the judge of probate and a license was made out, and they returned to his office where he performed the marriage ceremony while Kopke was still under arrest. He states that he did not know what the constable said to Kopke, and that Kopke when the ceremony was over, left her and refused to have anything to do with her.

The license does not purport to have been issued or signed by the probate judge himself, but by an officer calling himself deputy clerk. The law as sworn to does not authorize such a signing.

Inasmuch as the justice and parties were all personally cognizant of the facts attending the issuing of the license, none of them can be regarded as having been deceived as to the conditions under which it issued. Both justice and parties were therefore presumed to know it was not such a license as gave him authority to act.

We are not disposed to question the validity of a marriage in Ohio, whether regularly solemnized or not, where

parties have acted upon it in good faith, and have treated each other as married persons subsequently. Such is we think the accepted doctrine in that State. *Carmichael v. State* 12 Ohio St. 553. But we think the rule fairly to be inferred from that case is that where there is no ceremony, or one which does not comply with the statutory conditions, there must be some independent proof of an actual and voluntary consent indicating the existence of a deliberately recognized marriage. By the ancient law there was no presumption of marriage without subsequent cohabitation as husband and wife. The rule laid down by this court in *Hutchins v. Kimmell* 31 Mich. 126, requires very clear evidence of conduct in confirmation of the relation, where not otherwise made out. The presumption from a regular ceremony, unattacked, is very cogent. But inasmuch as consent lies at the bottom of all these presumptions, positive evidence of non-assent is of weight against an irregular ceremony, and should be considered by the jury.

As the record stands, we think the court was not authorized to say the marriage was made out as effectually as the jury must have been led to believe from the charge. For this error a new trial should be granted.

The other Justices concurred.