PEOPLE *v.* LOOMIS.

1. SEDUCTION—SHAM MARRIAGE—COMMON LAW OF FOREIGN COUN-
TRY—PRESUMPTION—EVIDENCE.

In a prosecution for seduction alleged to have been accomp-
lished by means of a sham marriage, it appeared that the
parties, who were competent to enter into the marriage con-
tract, went to Canada, and there agreed, in the presence of a
person whom the prosecutrix then believed to be a minister,
to take each other as husband and wife, and that they there-
after cohabited as such. *Held:*

(1) That these facts would have been sufficient to establish a
valid common-law marriage in this State, and, in the absence
of evidence to the contrary, would be presumed to have consti-
tuted a valid marriage under the laws of Canada.

(2) That proof of additional, positive requirements of the
Canadian law would not alone defeat this presumption, but
a non-compliance therewith must be shown.

(3) That such presumption was not rebutted by evidence of
respondent's subsequent assertions that the marriage was a
mere sham.

(4) That, the presumption of a valid marriage existing, the
prosecution must fail.

2. PUBLIC RECORD—PROOF OF NON-EXISTENCE.

The non-existence of a marriage record is not shown by the
testimony of a witness to the effect that she went to one
whom she supposed to be a magistrate, and that he instituted
a search, and told her there was no such record.

3. EVIDENCE—FOREIGN STATUTES.

Testimony tending to prove the laws of a foreign country is
improperly admitted where the means of knowledge of the
witness are not shown.

Error to recorder's court of Detroit; Chapin, **J.** Sub-
mitted June 20, 1895. Decided July 9, 1895.

Joseph W. Loomis was convicted of seduction, and
sentenced to imprisonment in the state prison at Jackson
for five years. Judgment reversed.

*Frank C. Moriarty (George X. M. Collier,* of counsel), for
appellant.

*Fred A. Maynard,* Attorney General, *Allan H. Frazer,* Prosecuting Attorney, and *Ormond F. Hunt,* Assistant Prosecuting Attorney, for the people.

LONG, J.  The information in this case charges the respondent with having seduced and debauched one Minnie Webb on or about the 1st day of June, 1893. The evidence on the part of the people tended to show that Minnie Webb was invited by respondent, in June, 1893, to go over to Windsor with him and be married; that they went before a man whom she at the time supposed to be a minister, and a ceremony was performed which she supposed at the time was regular and proper; that respondent told her that he did not have enough money to go to housekeeping, and that, as she was already living with his mother, she had better continue doing so, and say nothing about the marriage, as his mother might object to the marriage, and that in the fall they would go to housekeeping; that Miss Webb stayed at the house of respondent's mother the same after marriage as before; that she was not introduced to any one as his wife, but that they cohabited together; that the following November respondent asked her to steal some money from her father, and promised that if she would do so he would go to Chicago and start a saloon and gambling rooms. This Miss Webb refused to do, and respondent then told her she was not his wife. Miss Webb says she thought at first that respondent was in a fit of anger; but afterwards he went on to state how he had taken her over to Windsor, and how he had a friend of his perform this ceremony, and that he had so carefully covered up his tracks that she would never be able to uncover them, and that she would never be able to do anything with him. She then contiued:

"Then I threatened to have him arrested, and he says, 'Well, if you have me arrested, the judge in the courthouse will say, "that is a damn shrewd trick,"' his taking

me over to Windsor and having this ceremony performed.
I would not have had intercourse with him if I had not
supposed I was married. I was induced to stay with him,
sleep with him, because I supposed I was married to him.
I did not know until November. I am 23 years old. At
the time the ceremony was performed I was not a mar-
ried woman."

Afterwards she went over to Windsor to see if there
was any record of the marriage. She testified, on redi
rect examination, as follows:

"I went over to search the records in Windsor to see
if we were married. The justice sent me over, and I saw
I guess it was a magistrate, and he had the records
searched, and he sent around to the different ministers
to find out. There was no record of marriage there."

On recross-examination she testified:

"I don't know whether there was any record kept or
not of that marriage. I suppose there could not have
been; we could not find any. We mutually agreed to
become husband and wife in the presence of this other
party, and I was very ignorant of the laws of Canada.
The laws of Canada require a marriage record."

On redirect examination she was asked by the prose-
cuting attorney:

"Do they have to get a license in Canada?
"*A.* Yes."

This was objected to, on the ground that the witness
was not shown to be competent to testify as to what the
laws of Canada are. The objection was overruled.

The theory of the prosecution was that the respondent
induced the prosecutrix to have sexual intercourse with
him by means of fraud. The prosecutrix testified that
a marriage ceremony was performed, and that the parties
thereto agreed to take each other as husband and wife.
The parties were competent to enter into the contract,
and apparently did contract with each other to be hus-
band and wife. Had such a contract taken place in this

State, followed by cohabitation as husband and wife, the marriage would have been valid. *Hutchins* v. *Kimmell,* 31 Mich. 126; *Peet* v. *Peet,* 52 Mich. 464. The marriage was presumptively valid in Canada. A marriage ceremony was performed, and the parties consented and agreed to the contract; and it has been held in this State that the common law as it exists among us will be presumed to prevail in a foreign country, in the absence of proof to the contrary. *In re High,* 2 Doug. (Mich.) 515; *Crane* v. *Hardy,* 1 Mich. 56.

The only remaining question is whether there was any proof in this case of local law or custom in Canada restrictive of this mode of contracting a valid marriage. It may be true that the prosecutrix made a search for a record of the marriage, and was unable to find such record. The testimony falls far short of showing that such a record does not exist. The testimony upon that question was mostly hearsay. All that the prosecutrix claimed to know of it was what some one told her, whom she supposed to be a magistrate there. But it is said that her testimony showed that the laws of Canada required a marriage license. It does not appear that no license was in fact obtained by the respondent, and, moreover, the prosecutrix was not shown to have any knowledge or means of knowledge as to what the laws of Canada on the subject are. There was nothing in the case that would warrant the court or jury in saying that the marriage in Canada was invalid. While the conduct of the respondent towards the prosecutrix was most wanton and cruel, yet his statement to her that there never was a valid marriage would not of itself prove the fact that no marriage contract was entered into, and would not rebut the presumption of a valid marriage. The presumption of a valid marriage existing, the respondent could not be held guilty of seducing and debauching the prosecutrix.

The judgment of conviction must be reversed, and a new trial ordered.

MCGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred with LONG, J. HOOKER, J., concurred in the result.