PEOPLE *v.* SOKOL.

1. BIGAMY—MUST BE PROOF OF TWO MARRIAGES.
   In a prosecution for bigamy there must be proof of
   two actual marriages, but either may be a common-law
   marriage.

2. MARRIAGE—NO PRESUMPTION MARRIAGE STATUTES SAME IN DIF-
   FERENT STATES—COMMON LAW PRESUMED TO BE THE SAME.
   In the absence of proof of statutes on the subject of
   marriage in other States, the court will not take judicial
   notice thereof nor presume them to be the same as ours,
   but will presume that the common law of other States
   is the same as ours.

3. BIGAMY—MARRIAGE—EVIDENCE—SUFFICIENCY.
   Evidence of an ecclesiastical ceremonial marriage per-
   formed by a Jewish rabbi in another State followed by
   cohabitation, *held*, sufficient, where undisputed, to estab-
   lish a valid, actual marriage, where the charge of bigamy
   is involved.

4. SAME—AMENDING INFORMATION.
   Permitting the prosecuting attorney to amend the in-
   formation by correcting the date of the first marriage,
   *held*, not error.

Exceptions before judgment from recorder's court
of Detroit; Cotter (Thomas M.), J.     Submitted Jan-
uary 18, 1924.     (Docket No. 139.)     Decided March
5, 1924.

Paul Sokol, *alias* Paul Freemir, was convicted of
bigamy.     Affirmed.

*Louis J. Colombo* and *Grosner & Burak,* for appel-
lant.

*Andrew B. Dougherty,* Attorney General, *Paul W.*

For authorities discussing question of conflict of laws relating
to bigamy, see note in 57 L. R. A. 159.
On necessity for proof of marriage in prosecution for bigamy,
see note in 68 L. R. A. 42, 49.
On presumptions flowing from marriage ceremony, see notes
in 14 L. R. A. 543; 16 L. R. A. (N. S.) 106; 34 L. R. A. (N.
S.) 940; L. R. A. 1915E, 186.

*Voorhies*, Prosecuting Attorney, and *Frank B. Ferguson*, Assistant Prosecuting Attorney, for the people.

FELLOWS, J.   In this prosecution for bigamy one Betty Sokol was called as a witness by the prosecution and testified that she came to this country about 15 years ago; that she was then single; that she met defendant soon after her arrival here and worked with him about two weeks in New York City when he asked her to marry him and that she consented; that they went to a Jewish rabbi who married them—asked them if they agreed to be man and wife; that there was another witness present besides the rabbi; that the ceremony was performed in the Jewish language; that this occurred November 8, 1907; that they lived and cohabited together as husband and wife thereafter, she always being held out as the wife of defendant; that she bore him three children, all of whom knew defendant as father and called him father; that they lived together as husband and wife in New York City, Canada, and for about eight years in Detroit; there was also proof that defendant had filed a bill for divorce and that in it he alleged that the marriage was a common-law marriage; there was proof of a ceremonial marriage between defendant and one Eliza Charack at Windsor on June 24, 1922, and proof that the later marriage ceremony complied with the Canadian law; there was proof that after the later marriage defendant and Eliza Charack lived and cohabited together as husband and wife at Detroit. There was no proof as to the statute law of New York on the subject of marriage.

We shall not separately consider defendant's claim that the testimony did not justify holding defendant to trial and his request for a directed verdict.   Both revolve around the same claim, *i. e.*, that there is no proof of a valid first marriage.   There is no doubt about the claim that there must in bigamy cases be proof of two actual marriages.   But either of these may be a common-law marriage.   *People* v. *Menden-*

*hall,* 119 Mich. 404 (75 Am. St. Rep. 408) ; *People* v. *Lewis,* 221 Mich. 164.    Defendant's counsel rely most strenuously on *People* v. *Lambert,* 5 Mich. 349 (72 Am. Dec. 49), and *Kopke* v. *People,* 43 Mich. 41.    The *Lambert Case* is a leading case and has been frequently cited by this and other courts.    It is, however, distinguishable from the instant case.    In that case the people established that there was a statute in the State of New Jersey on the subject of marriage but failed to establish by competent evidence what it was or that it had been complied with and sought to establish the *corpus delicti* by extra-judicial statements.    Here there is no proof in this record that there is any statute on the subject of marriage in the State of New York, and as held in the *Lambert Case* we do not take judicial notice of the statute laws of other States nor presume them to be the same as ours.    We do, however, presume that the common law of other States is the same as ours.    *High, Appellant,* 2 Doug. 515; *People* v. *Loomis,* 106 Mich. 250.    In the *Lambert Case,* Mr. Justice CAMPBELL by his reference to the holding of the English court pointed out the probative force of an ecclesiastical ceremonial marriage followed by cohabitation.    He said:

"The case of *Rex* v. *Inhabitants of Brampton,* 10 East, 282, is an instance where the evidence would be generally considered satisfactory.    There it was proved that the parties, with the express desire of marriage, went to a chapel in the island of St. Domingo, where a service, purporting to be a marriage service, was publicly performed by a person in the dress of a priest, and that they subsequently lived together until the death of one of them.    The publicity of the matter, the place of celebration, the previous intent and subsequent acts of the parties, were allowed and properly held to be proof of a valid marriage, according to the law of St. Domingo, without further evidence of that law.    The various opinions in the case all concurred in sustaining the marriage, and contain much good sense."

Turning to the opinions in the English case which Justice CAMPBELL said "contain much good sense" we find that Lord Ellenborough, Chief Justice, there said:

"And indeed after the ceremony of marriage, as it was understood and intended by the parties at the time to be, performed openly in a chapel, by a person appearing there as a priest authorized to perform the ceremony of marriage; and this followed by a cohabitation between the parties as man and wife for 11 years afterwards; every presumption is to be made in favor of its validity. I should have considered myself as safe in resting my opinion in favor of this marriage upon the law of England as it exists independent of the provisions of the marriage act. But without the aid of that, I think every presumption must be made in favor of its validity according to the law of the country where it was so celebrated; having been performed there in a proper place, and by a person officiating as one competent to perform that function."

And Justice Grose, in concurring, said:

"From these facts the presumption would be that it was a marriage according to the law of that country, by a priest of that country cognizant of its laws in that respect, and who it must be presumed would celebrate it according to the law of his own country."

These opinions recognize the probative force of proof of an ecclesiastical ceremonial marriage, such a one as is in use throughout the civilized world, when followed by cohabitation, not only as establishing an actual marriage but also as presumptively establishing that it is in accordance with the law of the land where it is performed.

In *Kopke* v. *People, supra*, the first marriage was a civil one and under a license irregularly issued; there was no subsequent cohabitation. Defendant insisted that it was procured by duress. Mr. Justice CAMPBELL also wrote the opinion in this case, and recognized

again the probative force of a ceremonial marriage if followed by cohabitation.    He there said:

"We are not disposed to question the validity of a marriage in Ohio, whether regularly solemnized or not, where parties have acted upon it in good faith, and have treated each other as married persons subsequently.    Such we think the accepted doctrine in that State.    *Carmichael* v. *State,* 12 Ohio St. 553. But we think the rule fairly to be inferred from that case is that where there is no ceremony, or one which does not comply with the statutory conditions, there must be some independent proof of an actual and voluntary consent indicating the existence of a deliberately recognized marriage.    By the ancient law there was no presumption of marriage without subsequent cohabitation as husband and wife.    The rule laid down by this court in *Hutchins* v. *Kimmell,* 31 Mich. 126 (18 Am. Rep. 164), requires very clear evidence of conduct in confirmation of the relation, where not otherwise made out.    The presumption from a regular ceremony, unattacked, is very cogent. But inasmuch as consent lies at the bottom of all these presumptions, positive evidence of non-assent is of weight against an irregular ceremony, and should be considered by the jury."

Turning to the case of *Hutchins* v. *Kimmell,* 31 Mich. 126 (18 Am. Rep. 164), cited by Justice CAMPBELL in the *Kopke Case,* we find the following:

"But had the supposed marriage taken place in this State, evidence that a ceremony was performed ostensibly in celebration of it, with the apparent consent and co-operation of the parties, would have been evidence of a marriage, even though it had fallen short of showing that the statutory regulations had been complied with, or had affirmatively shown that they were not.    Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to

legal penalties for a disregard for its obligations. This has become the settled doctrine of the American courts; the few cases of dissent or apparent dissent being borne down by a great weight of authority in favor of the rule as we have stated."

And in *People* v. *Calder,* 30 Mich. 85, it was said:

"Where the evidence shows that the parties appeared at a church, and that the officiating minister then publicly, and in the presence of other persons in attendance, in fact performed a ceremony of marriage between such parties, and further that the parties appeared to regard themselves as then married, it is fairly to be presumed in the absence of anything to the contrary, that the ceremony was regular and legal, although the evidence fails to show what words were used by the parties or the minister, or the particulars of the ceremony, or what specific kind of ceremony was or would be according to the forms, usages or customs of such church."

In *People* v. *Goodrode,* 132 Mich. 542, it was said by Justice Moore, speaking for the court, with the citation of numerous authorities:

"But, inasmuch as the testimony of the respondent and of Anna Carpenter showed the performance of a marriage ceremony between them on or about March 24, 1892, followed by their living together as husband and wife, we think a valid marriage was shown."

See, also, *People* v. *Imes,* 110 Mich. 250; *People* v. *Perriman,* 72 Mich. 184; *People* v. *Loomis,* 106 Mich. 250; *Boyce* v. *McKenna,* 211 Mich. 204; *Commonwealth* v. *Kenney,* 120 Mass. 387; 3 R. C. L. p. 808.

We think it must be accepted as the rule, not only in this State but generally, that proof of an ecclesiastical ceremonial marriage followed by cohabitation is sufficient, if undisputed, to establish a valid, actual marriage where the charge of bigamy is involved. The trial judge did not err in denying defendant's motion to quash and in refusing to direct a verdict for defendant. Nor did he err in permitting

the prosecuting attorney to amend the information by correcting the date of the first marriage. *People* v. *Lewis, supra.*

While we perceive no good reason for reading the section of the statute which the trial judge read to the jury, we are not persuaded that it constituted reversible error.

The conviction will be affirmed.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.