Israel Machransky, defendant in error here, by his petition in the common pleas court, alleged that he and Leah Belle Machransky were married in Russia about 1901, and that shortly thereafter they were divorced, by what is pleaded to be a Hebrew rabbinical GET, that after the divorce plaintiff migrated to the United States, and that for many years the defendant has pursued him through various courts upon various charges connected with their former matrimonial relations. Plaintiff further pleads that the defendant has been guilty of various acts, which, if true, would constitute extreme cruelty, and prays that the court determine the effect of the GET to be an absolute divorce, or, in the alternative, that he be now divorced from the defendant. Personal service was had upon the defendant, but she made default, except that she did file an application for temporary alimony, which was never disposed of. The defendant not appearing, the trial court heard the case and granted all the relief that the plaintiff prayed for, thus somewhat incongruously finding that the parties had been divorced in Russia some twenty years ago, and then proceeding to again divorce them.
The wife prosecutes error to this decree, the main contention in argument here being that the case was irregularly tried in the absence of her attorney, and under such circumstances as to be so unfair as to *Page 484 
require a reversal upon that ground. It appears in connection with this claim that she filed a motion to vacate the decree the next day after its rendition, and that that motion was heard upon testimony and overruled. The testimony upon the motion has not, however, been brought in the record by bill of exceptions, so the question is not adequately presented, and is not open to review by us.
There is before us, however, a bill of exceptions taken on the hearing upon the plaintiff's petition. It is argued that from this bill of exceptions it fairly appears that the plaintiff was not entitled either to equitable relief, establishing the efficacy of the Russian divorce, or to a divorce under the statutes of this state. The record shows that the parties were Jews, and we take judicial notice of the fact that they had very limited civil rights in Russia in 1901. The plaintiff testifies positively that he procured a rabbinical divorce some time thereafter. The record further shows that the defendant had expressly admitted that they had been divorced.
The word "GET" among the Jews signifies a divorce. It is usually prepared by a scribe employed by the husband, signed by the latter, and witnessed and delivered by the husband to the wife. Standard Dictionary. It announces in unequivocal terms that the parties are divorced and that the wife is at liberty to remarry. Under Jewish jurisprudence, the husband's right to divorce was absolute. The wife had the right to compel the husband to give her a divorce on certain grounds, and in such case was entitled to the return of her dowry. Kadashin's Jewish Code of Jurisprudence, page 513 et seq. Nothing appears in the record about the law of Russia *Page 485 
at the time in question, but the record does disclose these facts: Both parties were resident in Russia and were there married. Thereafter the husband divorced the wife and she received the return of her dowry of 300 rubles. Thereafter, in Russia, the husband remarried, his second wife bore him a child, and this family moved to America. It might be that the testimony establishing these facts was not the best testimony, but it was unobjected to, and is sufficient to establish all that it purports to prove. The intimate relationship between the Jewish law and the church is well known. When, therefore, it was shown that the parties had a rab binical GET, or divorce, we understand it to have been a divorce in accordance with Jewish law. The evidence at least does not show that this process of divorce violated any law of Russia, and the presumption is that it did not. Furthermore, the record unequivocally shows the second marriage of the husband in Russia, and it must be assumed that such marriage was not unlawful.
"When a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the prima facie legality of the last marriage. The presumption in such a case is that the former marriage has been legally dissolved, and the burden that it has not rests upon the party seeking to impeach the last marriage." 18 Ruling Case Law, 417.
While this system of divorce does not conform to *Page 486 
present standards in this country, its validity is to be determined by the laws of the country that at that time had jurisdiction over the parties. Each country establishes its own canons of marriage and divorce. In Ohio the power to divorce was at one time deemed to be a legislative function, and is now, elsewhere, so considered. In England it was for centuries, and elsewhere still is, within the exclusive jurisdiction of the church. Unless the law of the foreign domicile offends some positive law of this state, its action in divorcing its subjects or citizens cannot be questioned here. A striking illustration is found in the Massachusetts reports.
In Turkey the law provides that a wife who is married to a Christian may, by renouncing Christianity and adopting the Mohammedan faith and marrying a Mohammedan, be by virtue of these facts alone released from the obligations of her first marriage — that is to say, no legal procedure is necessary at all; the facts recited of their own vigor work a dissolution of the marriage relationship. It was held by the Supreme Court of Massachusetts, in Kapigian v. Minassian, 212 Mass. 412,99 N.E. 264, Ann. Cas., 1913D, 535, that the parties to the marriage relation, being domiciled in Turkey at the time, were by virtue of the Turkish law divorced in this summary method, and that the divorce was valid in Massachusetts.
There is no question that the plaintiff, Machransky, and the second woman to whom he was married have ever since lived as husband and wife and, as such, have raised their children. We must assume that, when they entered upon the marriage relation in Russia, they did so pursuant to law, that *Page 487 
they are now husband and wife, and that their children are legitimate.
It has been suggested in argument that in former litigation between these parties about the year 1919 it was established that the plaintiff and defendant were husband and wife, because at that time there was an award of alimony made against the husband in behalf of the wife, and it is argued that the finding in that case was res judicata of the relations existing between the parties in 1919. There was no pleading of former adjudication in this case, and we cannot look to the record in another case for the purpose of interposing for one of the parties in this case a defense that that party did not see fit to set up.
Our conclusion is that the common pleas court was right when it found that the parties here were divorced in Russia, and in so decreeing. The rest of the decree assuming to again divorce them was surplusage, but is not harmful, and need not be disturbed.
Judgment affirmed.
MIDDLETON, P.J., and THOMAS, J., concur.
Judges of the Fourth Appellate District, sitting in place of Judges SULLIVAN, VICKERY and LEVINE, of the Eighth Appellate District. *Page 488