## SILVA v. TILLINGHAST, Commissioner, etc.

District Court, D. Massachusetts. December 20, 1929.

### No. 4151.

Cornelius F. Keating, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John W. Schenck, Asst. U. S. Atty, both of Boston, Mass., for defendant.

MORTON, District Judge. This case presents a legal question of some importance under the current Immigration Act (Act May 26, 1924 [8 USCA §§ 145, 146, 166, 167, 179, 201 et seq.]). The petitioner is the wife of one Santos, a resident alien. She is not within any of the excluded classes and appears to be entitled to admittance except for the quota provisions. She presented an

immigration visa in the prescribed form issued by the American consul at Oporto, Portugal, certifying her as a Portuguese quota immigrant, who had been given a preference because of her marriage to Santos.

■ Upon her examination by the immigration authorities here it was developed that the marriage on which she relied had been formalized by proxy. Apparently she had lived with Santos in Portugal, and the proxy marriage took place after he had come to this country. It is unquestionably a valid marriage. Ex parte Suzahna (D. C.) 295 F. 713. There can be no doubt of her legal status as Santos' wife. By the Immigration Act, however (section 28(n), 8 USCA § 224 (m), marriage by proxy is not recognized as establishing a marriage status for immigration purposes. There is no finding by the immigration tribunals that any fraud was practiced upon the consul in obtaining the visa, and the evidence would not support such a finding. The immigration authorities having determined that the petitioner's status was not such as to entitle her to a preferential visà, held that the visa which she presented was of no effect and excluded her as having no visa.

■ The question which the case presents is whether the immigration tribunals had the right to go behind the visa, to examine into the facts on which it was based, and having concluded that it was erroneously issued to disregard it. Other points are argued for the petitioner, but none of them is well founded, nor in my opinion sufficiently doubtful to require discussion. The quota idea first appears in the Act of May, 1921 (42 Stat. 5). That act contained no provisions whereby aliens might inform themselves with certainty that the quota to which they were chargeable would not be filled before their arrival here. Shocking hardships resulted; e. g., In re Keshishian (D. C.) 299 F. 804. In the present act careful provisions are made whereby aliens who desire to emmigrate to this country must obtain an immigration visa from an American consul; no immigrant of the plaintiff's class is to be admitted to this country unless he presents a proper immigration visa (Act of 1924, 8 USCA § 213 (a); and consuls are kept informed whether to issue visas or not (Cook & Haggerty, Immigration Laws of U. S. § 67). The issuance of visas is entirely in the hands of the consular service, a branch of the Department of State which gives instructions in regard to them. The act makes detailed provisions for cooperative action between the two departments. An alien who obtains a visa is to be admitted if "otherwise admissible under the immigration laws." Act of 1924, 8 USCA § 213. "Nothing in this act shall be construed to entitle an immigrant, to whom an immigration visa has been issued, to enter the United States, if, upon arrival in the United States, he is found to be inadmissible to the United States under the immigration laws." (Act of 1924, § 2(g), 8 USCA § 202(g).

It is contended for the defendant that this confers upon the immigration tribunals the whole power to decide on admissibility, including the question whether the visa was properly granted. I am unable to agree with this contention. The question whether the alien is "otherwise admissible"; i. e., whether he comes within the excluded classes is, by the Act, expressly reserved to the immigration authorities. But the question whether a visa shall be granted is for the consular officer to determine. This power is expressly granted to him under section 2 of the act (8 USCA § 202). In exercising it he will sometimes pass upon questions of fact, for instance, whether the quota is already filled; in other cases he may have to make decisions of law, questions of nationality being often of this character. He belongs to an entirely different department of the government from the Immigration bureau; and to hold that his decisions on such matters are reviewable by the immigration tribunals would be basically inconsistent with the general principles of our government administration. It would hardly be contended, for instance, that the immigration tribunals might refuse admittance to an alien having a proper visa upon the ground that in their opinion it was issued after the quota was exhausted. The act as a whole shows, I think, a clear intent that in the absence of fraud the consul's determination as to the visa is final. U. S. v. Kellogg, 58 App D. C. 360, 30 F.(2d) 984. In other words all questions of fact, e. g. whether the applicant has a visa or is within the excluded classes, are for the immigration tribunals to decide it; but where all the facts entitling the alien to admittance exist, including a regularly issued visa, the immigration tribunals have no right to refuse admittance upon the ground that the visa presented was in their opinion mistakenly or improvidently granted by the consul.

It follows that the decision of the immigration tribunals was based upon a fundamental error of law and the writ must issue. If either party desires to present further evidence, the case must stand for hearing on

the right to discharge. If not, upon the parties filing a stipulation to that effect, an order will be entered discharging the petitioner.