COSULICH SOCIETA TRIESTINA DI NAV-
IGAZIONE v. ELTING, Collector of
Customs.

No. 446.

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

John M. Lyons, of New York City (Mark E. Cymrot, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an action to recover for fines imposed under section 9 of the Immigration Act of 1917 (39 Stat. 880), upon a carrier for bringing in excludable aliens. It was tried to a jury of one and the evidence consisted only of the records before the Board of Special Inquiry, and the correspondence between the plaintiff and the Department. Three aliens are in question; all were excluded for illiteracy, and it is not seriously questioned that they were in fact illiterate. Two claimed admission as returning from an unrelinquished domicile of seven years, and as reservists who had served in the Italian army during the Great War. The third, a woman, had been married in Italy by proxy in 1922, to an American citizen at that time in this country. We consider the first two in one group, and the woman last.

As to the first we are met at the threshold by our decision in Compagnie Francaise de Navigation a Vapeur v. Elting (C. C. A.) 19 F.(2d) 773, and as the question is involved in a number of the cases which we are deciding at the same time, what we say will apply to all. That case involved an alien who was returning from a temporary absence abroad, and who was excluded under the Quota Act of 1921 (42 Stat. 6). We held that as the alien might under the regulations overcome the burden of proof against him from an absence of six months, and could do so only by presenting his evidence at the port where he arrived, he had an unconditional privilege to come here for the purpose, which necessarily implied a correlative privilege of the carrier to bring him. To impose a fine for so doing would, we said, make the carrier the final ar-

biter, and so defeat the very purpose of the statute and the regulations. This was followed by North German Lloyd v. Elting (C. C. A.) 48 F.(2d) 547, a case involving aliens disabled from earning a living, where we reached an opposite result, although they too might be able to persuade the local authorities that their disabilities were not great enough to exclude them, and that could be determined only here. In North German Lloyd v. Elting (C. C. A.) 54 F.(2d) 997, we had the case of an alien coming on a temporary visit, and we relied upon Compagnie Francaise de Navigation a Vapeur v. Elting, supra (C. C. A.) 19 F.(2d) 773, and held that the carrier was privileged to bring the aliens here to establish their right. That case went to the Supreme Court, and was reversed in Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337. That court held that, since the carrier was able to determine admissibility at the port of embarkation, it accepted the alien at the peril of the Secretary's eventual decision, not only as to exclusion, but as to its own proper diligence; and that if the Secretary had not abused his power, it had no redress. We should have had no doubt that this covered, not only the case of an alien seeking to come in on a temporary visit, but also one returning from a temporary visit abroad, except for the caveat on page 328 of 287 U. S., 53 S. Ct. 164, 77 L. Ed. 337, where Compagnie Francaise de Navigation a Vapeur v. Elting, supra, (C. C. A.) 19 F.(2d) 773, was expressly mentioned, and the point there involved reserved. At the same time was decided Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341, which concerned aliens disabled from earning a living, and in which the court adopted the same doctrine.

It seems to us that in spite of the caveat, there can be no longer any doubt that in all cases where the carrier has the means of learning the truth, it takes the hazard of the Secretary's decision, and that Compagnie Francaise de Navigation a Vapeur v. Elting, supra (C. C. A.) 19 F.(2d) 773, must be overruled. We so hold. It can make no difference that in the case of aliens returning from a temporary absence, there are regulations giving them the chance to rebut the presumption arising from an absence of more than six months. There are also regulations touching temporary visitors. Section 3, subd. H. Indeed regulations can make no difference anyway. In all cases the final word is spoken here; for example, the question of how far a disability will affect the alien's ca-

pacity to earn a living is in many cases especially a matter of discretion and cannot be determined abroad. If there is any controlling principle whatever, the privilege of the alien is equal in each case, and the situation of the carrier must be the same. If therefore, as is now authoritatively decided in the case of temporary admission, and of disability affecting earning capacity, the carrier has no absolute privilege, it can have none in cases of a return from temporary absence. It is true that the stake is usually greater in the last case, though not always; but the statute was not drawn for such distinctions, and none should be made. This may indeed confer upon the carriers a power of exclusion which will prove oppressive; if it does, Congress may find it necessary to intervene. But it is impossible to execute its present policy of imposing penalties upon the carriers on any other terms, and when they accept aliens, it must be upon the understanding that, if excluded, they must abide by the decision of the Secretary in passing on their excuses, and upon the limited review of the courts.

■■ We come therefore to whether the aliens at bar were inadmissible in fact, and whether the plaintiff could have learned that they were. The two male aliens were, as we have said, illiterates. One had come here in 1897 and lived here continuously till 1901, when he left for six years, coming back in 1907. He left again in 1914, to serve in the Italian army, and was mustered out in 1919. When he came back in October, 1923, he was excluded. All these facts were accessible to the plaintiff and with notice of them we charge it; the only question is as to his admissibility. The joint resolution of October 19, 1918 (40 Stat. 1014 [8 USCA § 230]), gave to illiterates, among others, who had previously resided in the United States and served in allied armies, one year after the end of the war to apply for admission, and two years to come in. One proviso of section 3 of the Act of 1917 (8 USCA § 136) gave to illiterates the privilege of re-entry, if they had been in residence for five years, and had not been absent for over six months; another proviso gave the Secretary power to dispense with the statute generally in the case of aliens returning from an unrelinquished domicile of seven years. The alien had been absent more than six months and could not use the first of these provisos. He could not use the joint resolution because he came back more than two years after the end of the war. He did not show an unrelinquished domicile of seven years before 1923; he had been absent all of that period,

and though he was serving in the army for the first three of these, he delayed his return after being discharged, for four years without adequate explanation.

■ The second male· alien first arrived in 1904 and left in 1908; he came back in 1910 and left again in 1913, and three months later began to serve in the Italian army. He came back in 1920, left again in September, 1923, and came back in March, 1924, not having been then absent for a full six months. There was no adequate evidence that when he left in 1913 he had acquired, or intended to keep, his domicile; he had not had an unbroken residence of five years; the joint resolution gave him the right to enter in 1920, regardless of his continued residence, but it did not give him the right to a second entry later. Its effect was exhausted upon his first entry, as more fully appears in our discussion in Navigazione Generale Italiana v. Elting, 66 F.(2d) 536, handed down herewith.

■ The third alien was a woman married by proxy in Italy to a man then domiciled in New Jersey and a citizen of the United States. The only question open is whether she was admissible, for in this case also the carrier could have learned all the facts. The law of Italy is not in evidence and unless we can presume what it is, the alien did not prove a valid marriage. In this respect the case differs from Ex parte Suzahna (D. C.) 295 F. 713; U. S. ex·rel. Aznar v. Com'r (D. C.) 298 F. 103; Kane v. Johnson (D. C.) 13 F.(2d) 432, and Silva v. Tillinghast (D. C.) 36 F.(2d) 801, in all of which the law of the lex loci celebrationis was proved. That is the law which controls. Restatement on Conflict of Laws, §§ 129, 130, 132. Now it is quite true that in a number of cases American courts have held that they would presume that the law of the place where the putative marriage occurred was the same as that of the forum. In re Chandler's Estate, 113 Cal. App. 630, 299 P. 110; Com. v. Kenney, 120 Mass. 387; Finer v. Steuer, 255 Mass. 611, 152 N. E. 220; People v. Loomis, 106 Mich. 250, 64 N. W. 18; Hynes v. McDermott, 91 N. Y. 451, 43 Am. Rep. 677. Compare Machransky v. Machransky, 31 Ohio App. 482, 166 N. E. 423. In some of these the marriage had taken place in common-law jurisdictions, and there was an especial reason for the presumption; moreover, courts are especially tender of the relation and assume the regularity of its celebration when they can. · However, in all the cases the parties had lived together for substantial periods, and the question was of the legiti-

macy of their connection in the past. Here the marriage was plainly to secure a status which should admit the alien; it had not been consummated, in spite of the startling assertion in one of the plaintiff's letters that it had been "consummated by proxy"; nor had the parties staked anything upon it which must be unravelled, if it was invalid. It seems to us that the presumption should not extend to· such a case. It is true that we may go some distance in our judicial notice of the law of a country like Italy. Gerli v. Cunard S. S. Co., 48 F.(2d) 115, 117 (C. C. A. 2). For example, we might here assume that a marriage there celebrated by civil authorities, the parties being present, was valid. But the question whether a marriage by proxy is valid is confessedly a vexed one. Lorenzen, "Marriage by Proxy and Conflict of Laws," 32 Harv. L. R. 473. We have no reason to assume what the law of Italy is on that subject, and it would be a violent presumption that it corresponded with our own. The chances are quite as likely that it did not, as that it did. Thus we do not think that we need consider the equally·vexed question whether a marriage by proxy was valid at common law.

Judgment reversed; case remanded for a new trial.