**NEW YORK & PORTO RICO S. S. CO. v. UNITED STATES.**

**No. 442.**

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Ray Rood Allen and Eugene Underwood, both of New York City, of counsel), for plaintiff-appellant-appellee.

George Z. Medalie, U. S. Atty., and George B. Schoonmaker, Asst. U. S. Atty., both of New York City, for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Neither party excepted to the findings of fact upon which the judgment was based.

They are as follows:

"Findings of Fact.

"1. The plaintiff is a New York corporation with its principal office and place of business at 25 Broadway, City, County, State and Southern District of New York.

"2. In April and May, 1928, four Spanish aliens, Manuel Perez Manas, alias Francisco Cofresi, Diego Reguena y Capparos, alias Domingo Luciano; Diego Haro y Gonzales, alias Mercedes Rodriguez, and Damian Flores Martinez, alias Horacio J. Carrero, proceeded from Santo Domingo City to San Juan, Porto Rico, upon plaintiff's steamship Coamo. Each held a passage ticket in the name of the person under whose alias he traveled. Manas and Gonzales possessed affidavits of citizenship in the names of Cofresi and Rodriguez, respectively, purporting to have been sworn to before a United States Vice Consul by Cofresi and Rodriguez, claiming Porto Rican birth, and United States citizenship. Caparros and Martinez each possessed birth certificates in the name of Martinez and Carrero, respectively, purporting to show that the person under whose alias each traveled was born in Porto Rico of parents who later became Americans and purporting to come from official sources in Porto Rico. The said affidavits of citizenship were as follows:

" 'American Consular Service

" 'Dominican Republic, City and Province of Santo Domingo Consulate of the United States of America. ss:

" 'Personally appeared before me, William B. Lawton, Vice Consul of the United States

of America at Santo Domingo, D. R., duly commissioned and qualified—Francisco Cofresi, and being placed on oath according to law, did depose and swear:

" 'I am a citizen of the United States of America, residing at Cabo Rojo, Porto Rico, having been born in Cabo Rojo, Porto Rico, on October 17, in the year 1899, of parents who later became Americans.

" 'That I have been abroad since September 15, 1924 sailing from Guanico, Porto Rico, for the port of La Romana, D. R. in the SS "Romanita."

" 'That I am making this declaration for the purpose of establishing my American citizenship in order to proceed to the United States (Porto Rico) to reside and perform the duties of citizenship therein.

" '[Signed]   Francisco Cofresi

" '[Jurat]'

" 'American Consular Service

" 'Santo Domingo, Dominican Republic

" 'Dominican Republic, City and Province of Santo Domingo Consulate of the United States of America. ss:

" 'Personally appeared before me, William B. Lawton, Vice Consul of the United States of America at Santo Domingo City, Dominican Republic, duly commissioned and qualified—, Mercedes Rodriguez, and being placed on oath according to law, deposed and swore:

" 'I am a citizen of the United States of America, residing at Barranquitas, Porto Rico, having been born in Juana Diaz, Porto Rico, on June 5th, 1885, of parents who later became Americans.

" 'That I have been abroad since September 5th, 1927, sailing from the port of San Juan, Porto Rico, for the port of Santo Domingo City, Dominican Republic, in the American SS "Catherine."

" 'That I am making this declaration for the purpose of establishing my American citizenship in order to proceed to the United States (Porto Rico) to reside and perform the duties of citizenship therein.

" '[Signed]   Mercedes Rodriguez

" 'Subscribed

" 'Subscribed and sworn to before me on this 8th day of the month of November A. D. 1927.

" '[Signed]   William B. Lawton,

" 'Vice Consul of the United States of America.

" '[Seal of Consulate affixed.]

" '[$2.00 stamp.]

" 'Service No. 2290

" 'Fee $2.00

" 'PAM'

"3. At the time the passage tickets were issued by plaintiff's agent in Santo Domingo City said agent had before it said affidavits and birth certificates but no investigation was made to verify the facts or to ascertain whether the claims of citizenship were well founded.

"4. Manas, Caparros and Gonzales testified before the Board of Special Inquiry at San Juan that they had purchased the tickets under which they traveled from a stranger to the plaintiff, that is, from a person unknown, in a public place in Santo Domingo City and that each purchased from the same person the affidavit of citizenship or birth certificate under which he traveled. The said aliens intended to remain permanently in the United States.

"5. No inquiry was made when the aliens boarded the vessel at Santo Domingo City to establish their identities as the persons named in the passage tickets and accompanying documents.

"6. The steamship company did not have knowledge of the transfer of the tickets or affidavits of citizenship or birth certificates and did not in fact know that the persons transported were not the persons named in the passage tickets.

"7. Upon the aliens' arrival at Porto Rico they were detained for examination, their true identity was discovered and they were denied admission upon the ground that they were aliens not in possession of unexpired immigration visas. Penalties were imposed against the steamship company in the sum of $1,000 each plus a $20 refund of passage money in respect of each under section 16 of the Immigration Act of 1924 (8 USCA § 216). A further penalty of $10 in respect of each was imposed for the failure to manifest said aliens correctly as required by section 14 of the Immigration Act of 1917 (8 USCA § 150). Plaintiff duly applied for the remission of said penalties and submitted affidavits to the Department of Labor after which all the penalties were imposed except that with reference to Martinez, alias Carrero, which was remitted. The steamship company paid to the United States the sum of $1,030 in respect of each of the aliens Manas, Caparros and Gonzales. Said payments were made under protest and the amounts thereof were covered into the Treasury of the United States with the exception of the $20 refund of passage money which in each of said three cases was returned to the alien.

"8. The said penalties were imposed by the Secretary of Labor upon the evidence

which was before him. The facts set forth in paragraph 1 to 6 inclusive hereof were a part of such evidence."

Upon these facts the court upheld the action of the Secretary of Labor in refusing to remit the fines imposed in the Manas and Gonzales cases, allowed recovery in the Caparros case, and entered judgment accordingly.

That part of the suit which included fines imposed under section 14 of the 1917 Act (8 USCA § 150) relating to the failure to deliver to the immigration officials accurate and full manifests or statements or information regarding all aliens on board the ship may be disposed of quickly. It was undisputed that the statute was violated. There is no provision for any remission of such fines, and that matter is at an end.

It is not claimed that these men were admissible as aliens or that the steamship company complied with the provisions of the immigration law in respect to them. Rather, the basis of its appeal is that they claimed to be American citizens and that their claim, since the steamship company had no notice that it was false and fraudulent, was sufficient to permit it to transport them to Porto Rico without incurring any penalty for so doing.

Before that is considered, it is necessary to determine whether within the meaning of the statute, they were brought to Porto Rico at all. Taylor v. United States, 207 U. S. 120, 28 S. Ct. 53, 52 L. Ed. 130; Cunard S. S. Co., Ltd., v. Stranahan (C. C.) 134 F. 318; The Habana (C. C. A.) 63 F.(2d) 812; Dollar S. S. Line v. Elting (C. C. A.) 51 F.(2d) 1035; and The Alfonso XIII (D. C.) 53 F.(2d) 124, have been called to our attention on the theory that they support the claim that the statute is inapplicable to transportation of aliens who represent themselves to be citizens. The cases cited deal with the transportation of alien sailors, alien stowaways, and with alien through passengers on a continuous voyage to a foreign port but not with aliens who falsely claim to be citizens and who are transported for the express purpose of remaining permanently in the United States.

That these aliens were actually brought here in violation of the statute is evident. The only relieving feature is that the steamship company had no notice that they were not citizens. The point for decision is merely whether such lack of notice of the fact was sufficient to call for discretionary action by the Secretary of Labor to remit the fines.

The statute permits, and within the scope of the Secretary's duty to administer the law fairly and justly requires, fines to be remitted when "it appears to the satisfaction of the Secretary of Labor that such person, and the owner, master, agent, charterer, and consignee of the vessel, prior to the departure of the vessel from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, (1) that the individual transported was an immigrant, if the fine was imposed for bringing an immigrant without an unexpired immigration visa. * * * " Section 16 (c), Immigration Act of 1924, 8 USCA § 216 (c). Cf. Lloyd Sabaudo v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341.

This steamship company accepted these aliens as passengers and transported them to Porto Rico on tickets which had been issued to others without doing a thing to determine whether in fact they were citizens or were even the men to whom the tickets had been issued. If its failure to take any steps to identify its passengers and its consequent ignorance of the facts is held sufficient to require the Secretary of Labor to remit the fines imposed, the statute will have little deterrent effect and the remission of fines will be based, not upon the exercise of reasonable diligence to ascertain facts but upon the absence of such diligence which results, at least, in lack of actual knowledge. Thus, instead of requiring a steamship company to exercise due diligence to find out whether or not it is complying with the law, a premium would be placed on ignorance of the facts either inadvertent or deliberate. This would do away with all cautious conduct in bringing aliens to this country which the statute was designed to secure, and we decline to hold that courts can control the discretion of the Secretary of Labor by giving such a construction to the law. On the contrary, in the absence of a showing of reasonable diligence the action of the Secretary is final.

It is argued that whenever passengers claim to be citizens a steamship company need do nothing to ascertain the actual facts in support of the claim but may bring them here to enable them to present their claim to the proper authorities for decision. It is said that any other construction of the law would give a steamship company the power to deprive a citizen in foreign parts of the means, and so of the right, to come home. The law involved here does not touch the right of a citizen to return to this country. It covers only the bringing here of aliens. What may be called the personal right of one who offers

himself as a passenger for transportation to come to the borders of this country may not entitle a steamship company to bring him here without penalty. That depends upon whether he is an alien the statute forbids the company to bring; and whether a fine imposed should be remitted depends upon whether the company exercised such diligence to ascertain what in fact it was doing that the Secretary of Labor is in duty bound to relieve a hardship unjustified by the facts in a particular case. The theory that because the statute does not forbid a person to present himself for admission entitles a steamship company to bring him here for that purpose was exploded in Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337, and Lloyd-Sabaudo v. Elting, supra, which controlled our decisions in Lamport & Holt v. Elting, 64 F.(2d) 93, and Cosulich Societa, etc., v. Elting, 64 F.(2d) 95. There is, to be sure, language indicating the contrary in Compagnie Francaise de Navigation a Vapeur v. Elting (C. C. A.) 19 F.(2d) 773, but that decision is overruled in Cosulich Societa v. Elting (C. C. A.) 66 F.(2d) 534, handed down herewith.

The Secretary of Labor did remit the fine in the case of one alien, Martinez, alias Carrero, who was transported on this same voyage. He did not buy his ticket as the others did. We need not, however, determine whether that fact or any other was sufficient to distinguish that case from the ones before us. The argument that the Secretary was arbitrary and capricious in refusing to remit these fines 'because he did remit that in the Martinez case is met by the fact that each case is to be considered on its merits and what action the Secretary of Labor may have taken in some other instance can have no bearing except on the consistency of his rulings or upon what conduct the company may have the right to believe will in the future be considered by him to be the exercise of reasonable diligence. Obviously, nothing he did in respect to remitting the fine in one case could have influenced the previous conduct of the company regarding the transportation of these other aliens contemporaneously with the one in whose case the fine was remitted.

The trial judge reversed the action of the Secretary in the case of the alien claiming to be Caparros because he had a birth certificate which was issued officially in Porto Rico. It is true that this on its face was probably better evidence of his claim that he was an American citizen than the affidavits the others possessed to support their claim to citizenship. Yet, it is difficult to say that the mere possession of a birth certificate would carry with it any greater assurance that the possessor was the actual person named in the certificate than that the possessor of an affidavit was the person who made it. The birth certificate being one of a number limited to those actually issued would perhaps be somewhat more difficult to obtain for fraudulent use by purchase or otherwise than would an affidavit. The supply of the latter is perhaps fairly to be said to be in a practical sense unlimited. But even so, the discretion to be exercised on the evidence is that of the Secretary of Labor and not that of a District Judge. The province of the latter extends only, as does ours, to deciding whether or not the Secretary could have within his discretion fairly and justly refused, on the facts, to remit the fine and not whether he would have been justified in our judgment in remitting it. That being so, it is impossible for us to say that the Secretary of Labor was bound to remit the fine merely because the alien possessed a birth certificate and the steamship company had no knowledge that it was not his own.

The judgment in the Caparros case is reversed. That in each of the other two cases is affirmed.